JUDGE BOBEBTSON
delivered the opinion op the court.
This is an action of slander brought by the appellant against the appellee, in which the plaintiff alleged that, being a citizen of Kentucky, and having resided in Bracken County for more than two years, and in the Berlin Precinct more than sixty days immediately preceding the last annual election, he offered to vote in his precinct at that election, but was not permitted to vote unless he would take the oath prescribed by the expatriation statute adopted March 6, 1862, for only an alleged violation of which his vote had been challenged; that thereupon he submitted to the requisition, and in the oath administered by one of the judges of the election he swore that he had never done any thing prohibited by that statute; and that after that oath the defendant (appellee), speaking in reference thereto, publicly charged that therein he had sworn falsely. The circuit court, adjudging the statute unconstitutional, and the' oath consequently void for Want of legal authority to require it, sustained a demurrér to the petition, and thereupon rendered judgment in bar of the action.
Unless the statute was constitutional, the utterance as charged did not amount to slander, because the oath was administered without lawful authority, and was no more binding than the void enactment itself; and therefore, although the statute has been since repealed, we are reluctantly compelled to decide in this case on its constitutional validity.
The act does not apply to residence, but only to citizenship. Had it declared that a citizen’s joining the Confederate army or serving its government shoiild be deemed a temporary non-residence in Kentucky, suspending his right of suffrage at her elections, a very different question would have been presented to this court. But while a citizen may with consent of his state, express or presumed, expatriate himself, no mere act of state legislation can per se denationalize him against his will or without his concurrence. Such compulsive excision of a *760 citizen is a heavy punishment, which can not be constitutionally inflicted without judicial conviction of some crime or other act denounced by legislation as a forfeiture of citizenship, any more than a bill of attainder without judicial conviction can constitutionally punish a citizen. -The most vital principle of the constitution is that which divides the three vital elements of all sovereignty—legislative, judiciary, and executive—among three separate organs of the people, and prohibits each from exercising functions not allotted to its sphere; and consistently with this conservative theory the legislature alone can define offenses and prescribe the punishment, and the judiciary alone can adjudge the accused guilty.
Whether joining the Confederate army and leaving the state to serve in. its cause was per se voluntary expatriation would be a judicial question. No legislation could make it so, nor could a court so decide on the simple act alone. The expatriation statute denounces a forfeiture of citizenship on certain conditions, and disfranchisement is only a legal consequence of that forfeiture. To decitizenize a freeman is a tremendous blow. It deprives him of his chosen country and home, and sunders his most endearing relations, social and civil. Is not this severely punitory; and who can be- lawfully so punished without conviction; and how can there be lawful conviction without trial. and proof; and what other department than the judiciary can try and decide on the evidence?
The eighth section of the second article of the constitution provides that “every free white male citizen of the age of twenty-one years who has resided in the state two years, or in the county, town, or city in which he offers to vote one year, next preceding the election shall be a voter.” And the fourth section of article 8 provides that “laws shall -be made to exclude from office and from suffrage those who shall thereafter be convicted of bribery, perjury, forgery, or other crime or misdemeanor.”
*761 Free suffrage is thus guaranteed to every citizen of Kentucky on the prescribed conditions only of age and residence; and this organic right being fundamental and above legislative power,, no legislative act can require any other qualification than citizenship and the constitutional age and residence, nor deprive any such citizen of suffrage for any other cause than “ conviction” of some crime or misdemeanor defined by a legislative enactment and made punishable by such disfranchisement. This is expressly required as indispensable to the forfeiture of suffrage as well as of office, and is therefore as necessary in the one class of cases as in the other. Without trial and conviction an office can not be constitutionally adjudged forfeited for crime. How then can suffrage be held to be forfeited for unadjudged crime. The expatriation act denounces the forfeiture of citizenship for imputed treason, and the forfeiture of the right of suffrage only as a necessary consequence of such denationalization. Then, as without conviction citizenship can not be forfeited by mere imputation of crime, suffrage, its constitutional incident, can not be thereby forfeited. Citizenship being the seminal principle of suffrage, the latter can not be lost by the imputation of crime which shall not have forfeited the former. As long as a man continues to be de jure a citizen, unconvicted of any crime forfeiting his incidental right of suffrage, his age and residence alone can determine his constitutional right to vote. And if his citizenship can not be adjudged forfeited for imputed crime before legal conviction, the same imputation can not alone deprive such a citizen of his constitutional right to vote.
The expatriation statute was enacted for the benevolent purpose of preventing citizens of Kentucky from joining or aiding the rebel army, and of inducing such as had joined or aided it to return to their allegiance to their state, and to the constitutional Union. As a penalty it denounces a forfeiture of citizenship, and the only disfranchisement which it contem *762 plated was the constitutional and inevitable sequence of the loss of citizenship. We do not doubt that the legislature had the constitutional power to prescribe the conditions on which a citizen should, against his will, forfeit or lose his citizenship. But how and by whom shall that forfeiture or privation be ascertained and fixed ? So the legislature may rightfully forfeit a citizen’s right to vote as a penalty for perjury or other crime. But if a citizen be challenged at the polls as disqualified by crime, can he be excluded without or before conviction, and who can convict ?
This is necessarily a judicial question, which can be constitutionally decided by the judiciary on a full and fair trial on an indictment or a presentment. It could not be rightfully adjudged, collaterally or incidentally, by the officers of an election; nor could any test-oath or self-condemnatory oath be either constitutionally required, or the refusal to take it be deemed a judicial trial and conviction of the imputed treason.. Notwithstanding the results of such a mock-trial, the citizen still would remain a citizen according to fundamental law; and, so continuing, he must have the legal right to vote as any other citizen of the age and residence prescribed by the constitution. A legislative act can not make voluntary rebellion involuntary expatriation.
The oath being required not to show that the appellant had changed his residence, but only that he had committed a crime which might deprive him of his citizenship and of his right of suffrage as a necessary consequence, it was without constitutional authority or sanction, and consequently void, and therefore nothing sworn to under it could have been, in the legal sense, perjury or punishable false swearing; and of course the charge made by the appellee to that effect was not in itself actionable slander.
Wherefore the judgment of the circuit court is affirmed.
Judge Williams dissenting.