CHIEF JUSTICE LINDSAY
delivered the opinion of the court.
While it is true the survey of Bush & Thompson will not close unless the courses and distances set out are to some extent disregarded, yet as the boundary lines are all established by reference to other surveys, there can be no substantial difficulty in locating the patent issued on the 12th of December, 1826.
From about the year 1836 the appellee and one Green have been in the actual possession of the tract of land covered by that patent, and have been all the while claiming to own it, professing at the same time to be the vendees of the patentees, or of their heirs at law.
It is useless to inquire as to the sufficiency of the conveyances under which they, claim. The continued actual adverse holding for the period of near thirty-five years has perfected their title as against all the world, unless it be the commonwealth.
The patent to Bush & Thompson can not be treated as void on account of any frauds that may have been practiced by the patentees in procuring it. Even if it were shown that they and the register of the land office had fraudulently combined to cheat the commonwealth, and that they each and all knew the patent boundaries embraced 2,000 instead of 800 acres, these facts would avail nothing in a collateral proceeding like this. In order to avoid the patent the commonwealth must have it annulled in a direct proceeding. (Jennings v. Whittaker, 4 Mon. 51; Bledsoe’s Devisees v. Wells, 4 Bibb, 329.) It is not pretended that this patent has been so annulled.
Even if it be admitted that the patent covers land lying within the surveys of Baldwin, this fact will not militate against the title of the appellee. His possession invests him with the estate that Baldwin may have held, and it is immaterial whether as to the latter the patent was or not void. Hence it results that in 1871, when the survey was made of the 120 acres claimed by appellants, the commonwealth had *382 no title unless it was reinvested with title by the failure of Baldwin and of Bush & Thompson to list the lands for taxation.
By section 5 of an act approved Dec. 19, 1801 (2 Statute Laws, page 1072), it was provided that “ any person (infants and persons non compos mentis excepted) claiming lands in this state and failing to list the same for taxation, in case of a resident when legally called on by a commissioner of tax, and in the ease of a non-resident, with the auditor on or before the first day of October next, shall for and in consequence of such failure forfeit his or her claim to this commonwealth.”
In the construction of this act it was held by this court that the failure by claimants of lands to comply with its provisions did not ipso facto divest them of title and vest it in the commonwealth, but that in each case an inquest of office found was essential to make complete and effectual the forfeiture.
But afterward, on the 12th of January, 1825, it was enacted “that in all cases where any lands shall hereafter be forfeited for failing to list for taxation, or stricken off to the state, the title of such lands shall vest in this-commonwealth by virtue of this act without any inquest of office found, unless said lands shall have been redeemed according to law.” (2 Stat. Laws, page.1079.)
Appellants do not claim that the lands covered by the patent to Bush & Thompson were ever stricken off to the state, nor that the supposed forfeiture has at any time been perfected by a proceeding made a matter of record. But upon proof of the fact that the public records fail to show that for certain years whilst the act of 1825 was in force, and before appellee claims to have acquired title, Bush & Thompson failed to list the lands for taxation, they insist the title was forfeited to the commonwealth, and that the lands were therefore subject to entry under the provisions of the act of March 2, 1860.
Conceding that the proof shows prima facie the lands *383 were not listed for taxation, and that the failure to list falls within the scope of the act of 1825, we will proceed to inquire whether it was within the power of the legislature to provide for the infliction of such a penalty without an inquest of office found?
In pursuing this inquiry we need not call in question the power of the legislature to provide for the levy and collection of taxes in the most summary manner. The right of the commonwealth through its executive and ministerial officers to assess property for taxation, to ascertain the sum payable by each tax-payer, and to seize and sell his property in satisfaction of such sum, is not open to doubt. It is equally clear the legislature may impose upon the tax-payer the duty of listing his property for taxation, and may prescribe, for the neglect of the duty so imposed, penalties reaching even to the forfeiture of the estate not listed. But when such laws are enacted the forfeitures prescribed must be regarded as penalties, and they can not be inflicted until inquiry has first been made and the commission of the offense ascertained by “due course of law.”
Self-enforcing penal statutes are repugnant to the plainest principles of justice, and are utterly inconsistent with the fundamental maxims of a government in which the judicial power is vested in a department separate from and independent of the law-making power.
“To enjoin what shall be done or what left undone, and to secure obedience to the injunction by prescribing appropriate penalties, belongs exclusively to legislation. To ascertain a violation of such injunction and inflict the penalty belongs to the judicial function.” (Gaines v. Buford, 1 Dana, 481.)
By the Magna Charta it is declared that no citizen shall be disseized of his freehold or be condemned but by the lawful judgment of his peers or by the law of the land. The sub,stance of this declaration is contained in our Bill of Rights. *384 Its meaning and intention is that no man shall be deprived of his property without being first heard in his own defense.
As said by this court in the case of Page v. Hardin (8 B. Monroe, 672), “We shall not argue to prove that in a government of laws a conviction whereby an individual may be deprived of valuable rights, and may moreover be seriously affected in his good fame and standing, implies a charge and trial and judgment with opportunity of defense and proof.”
Bush & Thompson were at no time arraigned for failing to list their land for taxation. They had no opportunity to be heard or to make defense, and yet the appellants, in a contest with the vendees of Bush & Thompson, are asking the courts to try the question of their guilt, and to adjudge that more than forty years ago the patentees neglected to perform a public duty, and thereby forfeited to the commonwealth their title to the land in controversy.
It may be that the act of 1825 was intended to confer power upon the courts in determining the rights of individual litigants to enter into collateral inquiries of this nature; and in the case of Robinson v. Huff & Whittaker (3 Littell, 38) it is intimated in a dictum that the legislature had the power to take and pass the title to real estate without inquest of office, and therefore to authorize the trial of a man’s guilt, and the infliction of the prescribed penalty in another than a direct proceeding against him. This conclusion seems to have been based upon the idea that the right of the citizen depends alone upon the common-law rule that no freehold may be given to the king) nor derived from him, but by matter of record, and that this common law is within the legislative control. But when it is attempted to pass title to the commonwealth and to forfeit the citizen’s property by way of punishing him for failing or neglecting to perform a public duty, his right to be heard in his own defense does not depend upon the rules of the common law; it is secured to him by *385 the constitution. (Gaines, &c. v. Buford, 1 Dana, 481; Page v. Hardin, 8 B. Mon. 672; Commonwealth v. Jones, 10 Bush, 725; Burkett v. McCarty, 10 Bush, 758; Griffin v. Mixon, 38 Miss. 424.)
We conclude without hesitation that so much of the act of 1825 as provided that for a mere failure to list lands for taxation the title should be forfeited, and should ipso facto, without inquiry or trial, and without opportunity to the party supposed to be in default, even to manifest his innocence, be vested in the commonwealth, is unconstitutional and void.
To deny to the legislature the power to work forfeitures for the non-listing of property for taxation, by the mere inherent force of the legislative enactment, is not to question its right to provide that without judicial proceedings it may cause property to be assessed, taxes to be levied, tax precepts to be issued, and the tax-payer’s property to be seized and sold for the purpose of enforcing collections. These proceedings are in their nature ministerial, and fall properly and naturally within the classification of executive duties. To seize the thing taxed, and to expose it to sale to raise the sum which it is the duty of the tax-payer to pay, is in no sense to forfeit his estate. It is to compel him, by due process of law, to discharge a public duty, and is closely akin to proceedings by writs of fieri facias to enforce the satisfaction of judgments rendered by courts of law.
But when the commonwealth, instead of thus subjecting to sale the delinquent tax-payer’s property, or so much as may be necessary to raise his proportion of the public burden, undertakes to treat his delinquency as a crime, and to punish him by forfeiting his estate, the constitutional guarantee which secures to the citizen the right to be heard before his freehold shall be seized or he be condemned, and to be proceeded against in accordance with “the law of the land,” applies, and the courts can not, in deference to the legislative department of *386 the government, hesitate to vindicate the constitutional rights of the individual.
The court below rightfully adjudged that the appellee is the owner of the one hundred and twenty acres of land mentioned in the caveat, and properly enjoined and restrained the appellants from carrying their survey bearing date July 4, 1871, into patent.
Judgment affirmed.