CHARLES H. WATTS, APPELLEE, v. W. E. GANTT ET AL., APPELLANTS.

FILED DECEMBER 4, 1894. No. 5727.

1. **Corporations**: RIGHT TO HOLD REAL ESTATE: COLLATERAL ATTACK. The right of a corporation to hold title to real estate, or to purchase and hold a lien thereon, cannot be questioned collaterally, but can only be attacked in a direct proceeding instituted for the purpose. Such purchase and holding are not void but are voidable, and none but the sovereign can object. *Missouri Valley Land Co. v. Bushnell*, 11 Neb., 192, followed.

2. **Husband and Wife**: MORTGAGE BY WIFE: CONSIDERATION. A married woman may in this state mortgage her separate estate or property to secure the payment of the individual debt of her husband. A loan of the money to the husband creating the debt so secured is a sufficient consideration for her executing and delivering the mortgage.

3. ———: ———: ———: SURETYSHIP. A married woman who executes and delivers a mortgage on her separate property to secure the debt of her husband occupies the position of surety of her husband to the extent of the property mortgaged.

4. **Principal and Surety**: EXTENSION OF TIME. An extension of time for the payment of a debt will not discharge a surety unless it is for a definite time and on a sufficient consideration.

5. **Counter-Claims**: LIBEL: MORTGAGE FORECLOSURE. Certain alleged counter-claims pleaded in the answer of one of the defendants, *held*, not to arise out of the transaction upon which the

plaintiff's cause of action was based and not connected with the subject of the plaintiff's action, and hence not competent as counter-claims in this action.

The opinion contains a statement of the case.

*J. J. McCarthy, W. E. Gantt,* and *W. P. Briggs,* for appellants:

A wife executing a mortgage on her separate property to secure the individual debt of her husband occupies the position of a surety. (*Hubbard v. Ogden,* 22 Kan., 363; *Bank of Albion v. Burns,* 46 N. Y., 170; *Smith v. Townsend,* 25 N. Y. 479; *Barrett v. Davis,* 15 S. W. Rep. [Mo.], 1010; *Nelson v. Bevins,* 14 Neb., 153.)

A valid extension of the time of payment of the note was made without the knowledge and consent of the surety and she is therefore released. (*Blazer v. Bundy,* 15 O. St., 57; *Wood v. Newkirk,* 15 O. St., 295; *Fawcett v. Freshwater,* 31 O. St., 637; *Jones v. Brown,* 11 O. St., 609; *Chute v. Pattee,* 37 Me., 102; *Long v. Rankin,* 12 S. E. Rep. [N. Car.], 987; *Scott v. Scruggs,* 11 So. Rep. [Ala.], 215; *Reynolds v. Barnard,* 36 Ill. App., 218.)

The agreement to extend the time has been fully executed and the time contracted for has actually been given. The surety is therefore discharged regardless of whether the original consideration for the extension was valid. (*Bever v. Butler,* Wright [Ohio], 367; *Munroe v. Perkins,* 9 Pick. [Mass.], 298; *Robertson v. Gardner,* 11 Pick. [Mass.], 150; *Ratcliff v. Pemberton,* 1 Esp. [Eng.], 35.)

The following cases are cited to sustain the right to the counter-claim: *Fox v. Abbott,* 12 Neb., 331; *Burlingim v. Cooper,* 36 Neb., 73; Maxwell, Pleading & Practice [4th ed.], p. 151.

*Wigton & Witham, contra:*

The surety is not released. (*Jenness v. Cutler,* 12 Kan., 500; *Pierce v. Goldsberry,* 31 Ind., 52; *McComb v. Kit-*

*tridge*, 14 O., 348; *Bailey v. Adams*, 10 N. H., 162; *McLemore v. Powell*, 12 Wheat. [U. S.], 553; *Crossman v. Wohlleben*, 90 Ill., 537; *Waters v. Simpson*, 2 Gilman [Ill.], 570; *Woolford v. Dow*, 34 Ill., 424; *Reynolds v. Ward*, 5 Wend. [N. Y.], 501; *Fulton v. Matthews*, 15 Johns. [N. Y.], 433; *Halliday v. Hart*, 30 N. Y., 474; *Harter v. Moore*, 5 Blackf. [Ind.], 367; *Abel v. Alexander*, 45 Ind., 523; *Byers v. Harris*, 25 N. W. Rep. [Ia.], 879; *Hunt v. Postlewait*, 28 Ia., 427; *Michigan State Ins. Co. v. Soule*, 16 N. W. Rep. [Mich.], 662; *Burr v. Boyer*, 2 Neb., 265; *Dillon v. Russell*, 5 Neb., 484.)

The alleged counter-claim for libel must fail for the reason (1) that it accrued after the commencement of this action (Code, sec. 101; *Simpson v. Jennings*, 15 Neb., 671; *Tessier v. Englehardt*, 18 Neb., 167; *Wescott v. Archer*, 12 Neb., 346); (2) that the publications complained of were made in the progress of the suit in manner and substance as authorized by statute, and are absolutely privileged (13 Am. & Eng. Ency. Law, 406–410, and cases cited); (3) that even if the publications were not privileged, the charge of insolvency is not actionable *per se* unless it is made of a merchant or trader, or of one engaged in a business that is usually carried on by means of credit (*Hirshfield v. Ft. Worth Nat. Bank*, 18 S. W. Rep. [Tex.], 744; *Newell v. How*, 17 N. W. Rep. [Minn.], 383; Cooley, Torts, 202).

HARRISON, J.

On the 7th day of April, 1884, W. E. Gantt executed and delivered to Charles H. Watts a promissory note in the sum of $800, due April 7, 1889, and bearing interest at eight per cent per annum, and a mortgage to secure the payment of the note was executed by W. E. Gantt and his wife, Carrie E. Gantt, covering certain lots in Ponca, Nebraska, the title to which was of record in the name of the wife, Carrie E. Gantt, and which were her separate property. July 8, 1891, this action was instituted in the

district court of Dixon county to foreclose the mortgage,
and a portion of the relief prayed for in the petition
filed was the appointment of a receiver to take charge of the
property and collect the rents and profits thereof and apply
them on the indebtedness. The statement in the petition, to
show the necessity for the appointment of a receiver, was as
follows: "That since the execution of said note and mort-
gage, said lots have greatly depreciated in value on account
of the decline in real estate values in said city of Ponca,
and that said lots are entirely inadequate for the payment
of said mortgage indebtedness and tax lien, and an insuffi-
cient security for plaintiff's debt, the actual cash values of
said lots at this date being not more than $900, and the
aggregate amount of said mortgage indebtedness and tax
lien amounting at this date to the sum of $1,380; that W.
E. Gantt, the maker of said note, is insolvent and has no
property out of which said indebtedness or any part thereof
can be made, and that the rental value of said lots does
not exceed the sum of $180 per annum." The petition
also contained the following allegation: "That the defend-
ants Carrie E. Gantt and W. E. Gantt have wholly failed
to pay the taxes on said lots for the years 1887 to 1890 in-
clusive, and that said lots were on the 11th day of Novem-
ber, 1890, sold for taxes to the defendant the Farmers Loan
& Trust Company of Sioux City, Iowa, and that said de-
fendant has a tax lien on said lots, on account of said pur-
chase, in the sum of $400." With the petition there was
an affidavit filed for service by publication of the sum-
mons and also the notice of application for a receiver.
Publication of the two notices was commenced on the fol-
lowing day and continued to completion. The date at
which defendants were required to answer was August 7,
1891, and the time set for hearing the application for the
appointment of a receiver, August 15, 1891. The notice
of the hearing in the receiver matter was as follows: "You
are hereby notified that on the 15th day of August, A. D.

1891, at 10 o'clock A. M. or as soon thereafter as I can be heard, I will apply to the Hon. W. F. Norris, judge of district court, Dixon county, at chambers in Ponca, Nebraska, for the appointment of a receiver to collect the rents and profits of lots 7 and 8, block 99, Ponca, Nebraska, and report the same to said district court, upon the ground that said premises being the property of defendants Carrie E. Gantt and W. E. Gantt and mortgaged by them to the plaintiff to secure the payment of a promissory note executed by defendant W. E. Gantt to the plaintiff April 17, 1884, for $800, defendant Farmers Loan & Trust Company has a tax lien on said lots, and that said lots are insufficient security for the payment of plaintiff's debt, and that W. E. Gantt, the maker of said note, is insolvent, and has no other property out of which said debt can be made," etc.    This notice was published in the Ponca *Gazette* on July 9, 16, 23, 30, and August 6, 1891.   With reference to the hearing on this branch of the case there appears the following admission in the fifth paragraph of a stipulation admitting certain facts: " It is admitted that no hearing has ever been had on the motion for the appointment of a receiver; that at the time set for said hearing, to-wit, on the fifteenth day of October, 1891, an objection was made by defendants W. E. Gantt and C. E. Gantt to Judge Norris exercising jurisdiction, on the ground that he would be a material witness in the case, and for said reason said judge refused to act on the same, and the same for said reason has never been passed upon."

The answers of the principal defendants, the Gantts, were not filed on or before the answer day, August 7, but were filed out of time.   The answer of Carrie Gantt was first directed to the sixth paragraph of the petition and denied the existence of any lien against the premises arising from the purchase of the property for delinquent taxes, and averred that the Farmers Loan & Trust Company was a foreign corporation, organized and existing under the laws

of the state of Iowa, and had never been a corporation of
the state of Nebraska, and was not entitled to do business
in this state, and that its pretended purchase of the prem-
ises for taxes was void; that the articles of incorporation,
or charter of the company, did not empower it to pur-
chase lands for delinquent taxes at tax sales or to hold such
liens, hence the purchase of this property by it was un-
authorized and void and gave it no right of lien. This was
followed by a denial of each and every allegation of the
seventh paragraph of the petition, and the remaining por-
tions of this answer were devoted to setting forth that the
premises mortgaged were the sole and separate property of
Mrs. Gantt, and the debt evidenced by the note that of the
husband alone, and that no benefit from the loan made to
the husband when the note and mortgage were given, or
its proceeds, was ever received by her, nor was any of the
money loaned in any manner used upon or for the benefit
of her separate estate or property and that no consideration
passed to her for executing the mortgage; that her liability
created by signing the mortgage was that of a surety, and
that she was discharged from liability as such surety by
reason of extensions of time for payment of the note,
granted to her husband after its maturity, each for a defi-
nite time and valuable consideration, and without notice to
her, or knowlege on her part, of such extensions. W. E.
Gantt in his answer denies that the Farmers Loan & Trust
Company have any lien against the premises described in
the petition by reason of its pretended purchase for delin-
quent taxes; also denies the statement of the seventh para-
graph of the petition, and for further answer sets up five of
what in the answer are denominated counter-claims, the
first of which is as follows: "That on the 9th day of July,
1891, at Ponca, Dixon county, Nebraska, the plaintiff
falsely, wickedly, and maliciously composed and published
of and concerning the defendant, in a newspaper called the
Ponca *Gazette,* the false and defamatory matter following,

to-wit [then followed the notice of application for re-
ceiver, as heretofore copied]; that at the time of publica-
tion of said notice the said plaintiff had filed in the office
of the clerk of the district court in and for Dixon county
the petition, but had not at said time taken the steps neces-
sary to commence an action by causing the issue of a sum-
mons therein, and that at the time of the publication of said
notice no action had been commenced. or was pending in
said court by reason of which said plaintiff could apply
for the appointment of a receiver, and plaintiff well knew
that neither the district court nor the judge thereof had
jurisdiction to hear said application on the day named and
set in said application at said time, or at any other time
under said notice, and plaintiff well knew that the charge
of insolvency made by him in said notice was false and
that he could not prove said charge.    (2.) That by reason
of said false and defamatory publication the defendant was
injured in his reputation and business to his damage in the
sum of $5,000." The other four are pleaded in substan-
tially the same language, except that the damages claimed
in each of them is $2,500 instead of $5,000, as claimed in
the one quoted.

The reply filed to the answer of Carrie E. Gantt was a
general denial, and to that of W. E. Gantt was an admis-
sion of the publication of the notice of application for the
appointment of a receiver, and a general denial of each and
every other allegation of such answer.

During the January term of the court in Dixon county
there seems to have been an application for a change of
venue, and an order was made transferring the case to
Wayne county for trial, where it was finally tried before
the Hon. Wm. V. Allen, judge, on the 13th day of April,
1892.    On the 4th day of April, 1892, the Farmers Loan
& Trust Company filed a special appearance, objecting to
the jurisdiction of the court to entertain or hear the matters
alleged in the answers of the Gantts, in so far as it related

to the trust company or involved its rights, and asked affirmative relief as against it, for the reason that it had not been served with any notice of the filing of such answers; and on April 9, without any leave obtained, filed an answer to the portion of the pleading filed by Mrs. Gantt, which alleged matter upon which was based a prayer for affirmative relief against the trust company. The trial resulted in a decree in favor of plaintiff for the amount due on the note and foreclosure of the mortgage, and the defendants W. E. and Carrie E. Gantt have appealed to this court.

We will first dispose of the question which is raised by the portion of the answer of Mrs. Gantt, in which the authority of the trust company to acquire a lien on the real estate by purchase at tax sale is assailed because not allowed by its charter, and for the further reason that it was not authorized to do business in Nebraska. If there had been no appearance on the part of the trust company, then no affirmative relief could have been granted against it on the answers, as they were filed out of time and no notice of their filing was served on the trust company. Service of such notice was necessary to entitle the parties to affirmative relief (see *Cockle Separator Mfg. Co. v. Clark*, 23 Neb., 702); but if the trust company made a general appearance when it filed what was intended for a special appearance, or when it filed its answer without leave obtained of the court, no decree could be rendered affecting it or its rights in the premises, for, under the rule announced by this court in *Missouri Valley Land Co. v. Bushnell*, 11 Neb., 192, its right to purchase and hold the lien on the real estate could not be assailed in this action, but if attacked, it must be in a direct proceeding instituted for that purpose and the objection must come from the sovereign or state. (See, also, *Carlow v. Aultman*, 28 Neb., 672; *Meyers v. McGavock*, 39 Neb., 843; *Hanlon v. Union P. R. Co.*, 40 Neb., 52.)

On the other point made by Mrs. Gantt in her answer, that the mortgage was made to secure her husband's individual debt and not in any manner or measure for the benefit of her or her separate estate, and that she received no consideration for executing the mortgage, the making of the loan to her husband was sufficient consideration for her execution and delivery of the mortgage. (See 1 Jones, Mortgages, sec. 113; *Buffalo County Nat. Bank v. Sharpe*, 40 Neb., 123, and cases cited; *Smith v. Spaulding*, 40 Neb., 339.) It is further contended in her behalf that there were extensions of time for payment of the note, granted to her husband for a valuable consideration and without her knowledge, and that her property was thereby released from any further liability for the payment of the debt. It was held in *Buffalo County Nat. Bank v. Sharpe, supra*, that by giving a mortgage on her separate property, to secure the payment of her husband's debt, the wife became bound to the extent of the property mortgaged; that to the extent that she thus binds herself, she occupies the position of a surety. (See *Stevenson v. Craig*, 12 Neb., 464.) It appears that the debt in the case at bar was allowed to run for two years and some months after its maturity. It was due April 7, 1889, and suit was commenced July 8, 1891. The interest was paid to April 7, 1890, one year after maturity, but there is no evidence of any consideration for any extension of time, more than the note and any interest which might accrue thereon according to its terms as a contract between the parties at any and all times during its existence; nor does the evidence show that there was an agreement to extend its payment for any definite time, or to any fixed date, so that it could not have been claimed to be due, and action instituted thereon by the owner, or payment made by the Gantts at any time after its maturity. In order to discharge a surety there must be more than a forbearance without consideration; nor will an extension of time of payment release a surety unless a

definite time is agreed upon. (*Dillon v. Russell*, 5 Neb., 484.) The evidence in this case does not show any extension or agreement for extension of time of payment of the note such as effects a discharge of a surety.

We will now turn our attention to the alleged counter-claims of W. E. Gantt. In section 101 of the Code it is stated: "The counter-claim mentioned in the last section must be one existing in favor of a defendant, and against a plaintiff, between whom a several judgment might be had in the action, and arising out of the contract or transaction set forth in the petition, as the foundation of the plaintiff's claim, or connected with the subject of the action." If it be conceded that there exist causes of action against the plaintiff in favor of W. E. Gantt, by reason of the matters contained in the portions of the answer under the head of counter-claims, which we do not now decide, then did they arise out of the contract or transaction set forth in the petition, or are they connected with the subject of the action? The transaction upon which the plaintiff's cause of action is founded is the loan of the money to W. E. Gantt, and delivery to plaintiff by Gantt and his wife of the note and mortgage, and their default in the payment of the debt. The alleged counter-claims grow out of a publication made months afterward, in which it is claimed there were libelous and defamatory statements of and concerning the defendant, to his injury in reputation and business. The action of the plaintiff and counter-claims of defendant rest on entirely different grounds, the plaintiff's cause of action on the contract as embodied in the note and mortgage, and the defendant's counter-claim upon the publication of the notice of application for a receiver. The loan was made and the note and mortgage given and default occurred months prior to the publication. We think it very clear that they do not arise out of the same transaction; the one arises out of the contract and the other out of the alleged wrong committed several

months afterward, each an entire, distinct, and separate transaction in and of itself. Neither do we think that the counter-claims can be said to be connected with the subject of the action. They are radically and irreconcilably different. The subject of one is a contract, and the other a tort; no connection between the two exists. It is true that the notice published was a notice in the case in which the mortgage was being foreclosed, but this fact cannot connect the facts which are combined to compose the alleged counter-claims with the facts entering into and forming the plaintiff's cause of action. They were widely separated as to the time of their occurrence and entirely different and distinct in their facts, and although one is caused by the publication of a notice in a suit pending in regard to the other, in their subject-matter there is no possible connection between them. In the case of *Rothschild v. Whitman*, 30 N. E. Rep. [N. Y.], 858, we find the following statement: "Where a seller of goods on credit causes the arrest of the buyer for inducing the sale by deceit, and the buyer, after discharge, sues for malicious prosecution, a claim by the seller for damages for the deceit is not a valid counter-claim, since it does not arise out of the same transaction, and is not connected with the subject-matter of the action as required by Code of Civil Procedure, section 501." And in the text of the opinion it is said: "There is no necessary or legal connection between the two. It is not like an action for converting wood and a counter-claim for waste in cutting the same wood (*Carpenter v. Manhattan Life Ins. Co.*, 93 N. Y., 552); or where certain goods are the subject of the action and a claim is made for the value of the same goods (*Thompson v. Kessel*, 30 N. Y., 383); or where a mutual claim is made to a trade mark. (*Glen & Hall Mfg. Co. v. Hall*, 61 N. Y., 226.) On the contrary, the effort is here made to set up one tort committed in January against another committed in September; the one being for an injury to property, and the other for an injury to

the person.   The circumstance that the deceit which con-
stituted the former was the pretext or excuse for perpetrat-
ing the latter, establishes no such connection as to satisfy
the statute, any more than if A slanders B on the 4th of
July, and B thrashes him for it at Christmas." (See, also,
*Merritt Milling Co. v. Finlay*, 15 S. E. Rep. [N. Car.], 4;
*Byerly v. Humphrey*, 95 N. Car., 151.)   We are satisfied
that these counter-claims, if they existed as causes of ac-
tion in favor of the defendant, were not competent as
counter-claims in the present action.   The decree of the
district court is

AFFIRMED.