CASE 75.—ACTION BY WALTER S. KING AGAINST GUSTA McMICHAEL AND OTHERS FOR THE SPECIFIC PERFORMANCE OF A CONTRACT IN THE SALE OF A LOT IN THE CITY OF LOUISVILLE, WHICH DEFENDANT CLAIMED HAD ESCHEATED TO THE LOUISILLE SCHOOL BOARD, AND THE PLAINTIFF COULD NOT MAKE HER A VALID TITLE THERETO.—January 22.

# Louisville School Board v. King

Appeal from Jefferson Circuit Court; Chancery Branch (Second Division).

Samuel B. Kirby, Judge.

From a judgment for plaintiff, defendants appeal— Affirmed.

1. Escheat — Grounds — Corporate Property—Constitutional and Statutory Provisions.—The holding by a corporation of property not necessary to its business for more than five years is a ground of escheat, under Constitution section 192, providing that a corporation shall not hold for more than five years property not necessary for its business, under penalty of escheat.

2. Same.—Constitution section 192, providing that no corporation shall hold any real estate, except such as may be necessary for carrying on its business, for more than five years under penalty of escheat, leaves to the Legislature discretionary power to determine when and under what circumstances the escheat of property so held shall take place.

Louisville School Board v. King.

3. Constitutional Law—Construction of Provisions.—All provisions of the Constitution and statutes should be interpreted to subserve the purpose for which they were enacted, and to that end the evil to be remedied should be considered.

4. Escheat—Constitutional and Statutory Provisions.—The court, in construing Constitution section 192, declaring that a corporation holding real estate not necessary to its business for more than five years holds it under penalty of escheat, and Ky. Stats., 1903, section 2971, providing that property escheating to the Commonwealth shall vest for the benefit of the schools, etc., will not impute to the makers of the Constitution, or to the Legislature, the intention to enrich the State at the expense of its citizens; nor will it assume that it was merely their purpose to punish offending corporations, but will assume that the provisions were enacted for the public good, so as to prevent corporations from holding more land than needful in their legitimate business.

5. Same—Grounds—Burden of Proof.—The burden of proving the existence of the grounds for the escheat of property specified in Constitution section 192, providing that real estate held by a corporation not necessary in its business for more than five years shall escheat, and Ky. Stats., 1903, section 2971, providing that property escheating to the Commonwealth shall vest for the benefit of the schools, etc., is on the Commonwealth, and not on the claimant in possession of the property.

6. Same—Enforcement.—Whether property of a corporation has escheated under Constitution section 192, providing that the real estate held by a corporation not necessary for its business for more than five years is held under penalty of escheat, Ky. Stats., 1903, section 2971, providing that property escheating to the Commonwealth shall vest in the school trustees for the benefit of the schools, etc., depends on the establishment of the necessary facts and the application thereto of legal principles; and the questions to be 'determined are such as are capable of adjudication only by the courts.

7. Corporations—Right to Hold Real Estate.—A corporation may lawfully acquire any quantity of real estate, and what is necessary to its business it may hold indefinitely, and what is useless for its business it may not hold any longer than five years, under Constitution section 192.

8. Escheat—Grounds—Enforcement.—Under Constitution section 192, providing that real estate held by a corporation not necessary in its business for more than five years is held under

the penalty of escheat, and Ky. Stats., 1903, section 2971, providing that property escheating to the Commonwealth shall vest in the board of school trustees for the benefit of the schools, and authorizing the board to take possession of the property or recover the same by action without office found, etc., useless real estate held by a corporation for more than five years does not ipso facto escheat, but the title to it remains in the corporation until an action of escheat shall have been instituted; and where, before that is done, the corporation bona fide conveys the property to a purchaser, the latter is vested with an indefeasible title.

9. Corporations—Capacity to Hold Property—Right to Question. —A corporation holding real estate, though the Constitution or statutes forbid it, holds the title, which is valid except as against the State alone, and the title of the corporation is good until invalidated in a direct proceeding by the State for that purpose.

10. Escheat—Grounds—Enforcement.—Whether a demand of an escheat of property by the State is based on the ground of alienage defect of heirs, failure of kindred, or on the ground that it is held by a corporation in contravention of law, there must be a judgment declaring the escheat before the State may rightfully take possession thereof, though the property is vacant.

11. Constitutional Law—Due Process of Law—Escheat.—Ky. Stats., 1903, section 2971, providing that property which shall escheat to the Commonwealth shall vest in the board of school trustees for the benefit of the schools, and the board may enter on and take possession of the property, or sue for the same without office found, if construed as ipso facto vesting title of property held by a corporation in violation of Constitution section 192, without any proceeding to accomplish that end, is void as amounting to the infliction of a penalty without trial.

12. Same.—Though the power to provide forfeitures and penalties is in the legislative branch, the power to inflict the penalties and forfeitures does not belong to the Legislature, but to the judiciary; and it can not inflict them without first affording an opportunity to be heard, for one can not be deprived of his property without due process of law.

13. Same.—The Legislature may provide by law that a corporation may not acquire or hold more than a given quantity of real estate, or that it shall not hold any real estate, except such as may be necessary in its business for a longer period

Louisville School Board v. King.

than five years, under penalty of escheat; but the Legislature can not enforce the penalty without a judicial proceeding in which the corporation may appear and defend.

O'NEAL & O'NEAL and WALLACE McKAY for appellants.

(No brief in the record for appellants.)

BULLITT & BULLITT and HELM BRUCE for appellees.

### PROPOSITION.

Title to corporate property held for more than five years in contravention of section 29, Ky. Stats., does not pass from the corporation, nor vest in the Commonwealth, until an action to establish the fact of escheat, shall have been instituted; consequently a conveyance of such property made in good faith for a valuable consideration to a third person vests in him an indefeasible title, free from the effect of subsequent proceedings to establish an escheat.

1. The purpose of the law is to force corporations to sell useless property; conveyances made even after the five-year period fulfill that policy and are valid.

2. The specific language of section 2971, Ky. Stats., recognizes that title to corporate property, held in contravention of law, remains in the corporation until proceedings for escheat shall have been instituted—the proceeding under that section being a substitute for the ancient "inquest of office found."

3. The construction of section 2971, Ky. Stats. insisted on by appellants' counsel would bring that statute into a distinct conflict with the general recording statutes of the State.

### AUTHORITIES CITED.

Constitution, section 192; Ky. Stats., section 2971; Comth. v. Chicago, St. L. & N. O. Ry. Co., 99 S. W. 956, 30 Ky. Law Rep. 673; 5 Thompson on Corporations, section 5797; 10 Cyc., 1135; Fayette Land Co. v. L. & N. R. R. Co., 93 Va. 274, 24 S. E. 1016; Marshall v. McDaniel, 12 Bush, 378.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

By a writing of date April 11, 1907, Walter S. King for a valuable consideration sold and agreed to convey to the appellant Gusta McMichael a parcel of ground in the city of Louisville. The lot had previously been conveyed to the Louisville Banking Company by a deed from the Parkland Improvement Company, dated July 10, 1897. On August 31, 1905, the Louisville Banking Company by deed conveyed the same lot to Grant and Wilson. Later Walter Wilson by deed conveyed his undivided one-half interest therein to Grant, who by deed of April 20, 1906, conveyed the entire lot to the appellee, King. Pursuant to the written contract of April 11, 1907, appellee offered to convey appellant Gusta McMichael the lot in question, and tendered her a deed therefor; but she refused to accept the deed or otherwise comply with the contract of sale. Thereupon appellee brought suit against her in the court below for a specific performance of the contract. She resisted its performance on the ground that appellee did not have title to the property and that the deed tendered would not have conveyed her the title, because it had, prior to the conveyance of the property to appellee, been vested by escheat in the Louisville School Board. The answer, after setting forth the several deeds under which appellee claimed title, averred that the property, while owned by the Louisville Banking Company, a corporation engaged in the business of banking, "was not proper or necessary for carrying on the legitimate business of the said Louisville Banking Company, and, they having held same for more than five years, it became thereby ipso facto escheated under the law, and the title vested in the

Louisville School Board.   After the filing of this answer the appellee, by an amended petition, made the Louisville School Board a party defendant to the action.   The Louisville School Board and the Commonwealth of Kentucky, for the use of the school board, then filed an answer, cross-petition, and counterclaim, relying upon the same facts set up in the answer of Mrs. McMichael, and alleging that by reason thereof the title to the property in controversy had by escheat become vested in the Louisville School Board.   Appellee by reply denied that the school board had acquired title to the property by escheat or otherwise, and averred that each of the conveyances referred to in the answers was made in good faith and for a valuable consideration.   Appellants McMichael, Louisville School Board, and Commonwealth, for the use of the school board, filed demurrers to the reply, which were overruled.   Appellants refused to plead further.   Thereupon the circuit court entered judgment in accordance with the prayer of the petition, and of this judgment appellants complain.

It is apparent from the record that the property in controversy was held by the Louisville Banking Company more than five years, and admitted by appellants that at the expiration of the five years no claim was asserted to it, on the ground of escheat, by the Louisville School Board or the Commonwealth of Kentucky.   Indeed, it is conceded that no such claim was made until the beginning of this action, instituted nearly two years after the Louisville Banking Company had bona fide and for a valuable consideration sold and conveyed the property to an admittedly innocent purchaser.   It cannot be doubted that the holding by a corporation of property not

necessary to its business for more than five years is by the Constitution made a ground of escheat. But the question as to when and under what circumstances the escheat shall take place, instead of being declared by the Constitution, was left by that instrument to legislative discretion. Const. section 192, provides: "No corporation shall engage in business other than expressly authorized by its charter, or the law under which it may have been or hereafter may be organized. Nor shall it hold any real estate, except such as may be proper and necessary for carrying on its legitimate business, for a longer period than five years, under penalty of escheat." The power impliedly conferred by this section of the Constitution upon the Legislature of determining when and in what manner the real estate of a corporation not proper or necessary for carrying on its legitimate business shall escheat to the Commonwealth seems to have been exercised by that body in the enactment of section 2971, Ky. St. 1903, which declares: "So much real, personal or mixed property in the city which from alienage, defect of heirs, failure of kindred, or other causes, shall escheat to the Commonwealth of Kentucky, shall vest in the board for the use and benefit of the schools. Said board may, in the name of the Commonwealth, for the use and benefit of the public schools of the city, by its president or other officer to be designated by it, enter upon and take possession of said property, or sue for and recover the same by an action at law or in equity, and without office found. The board may sell and convey any such property by warranty deed or otherwise."

To properly construe and arrive at the meaning of the provisions of the Constitution and statute above quoted, it will be necessary to ascertain what

evil they were intended to remedy; for all organic and statutory laws should be so interpreted as to subserve the purpose for which they were enacted. We will not impute to the makers of the Constitution or to the Legislature the degrading motive of intending by the provisions in question to enrich the State at the expense of its citizens; nor will we assume that it was merely their purpose to punish offending corporations. The true purpose of these constitutional and statutory provisions was correctly announced by this court in the case of Louisville School Board v. C., St. L. & N. O. Ry. Co., 99 S. W. 596, 30 Ky. Law Rep. 673, in the opinion of which it is said: "In the exercise of the police power of the State, it is declared by the section (2971) to be inimical to the public good that corporations, which may live always and grow ever so powerful, should be at liberty to hold any quantity of land, or engage promiscuously in business in this State. It was deemed safe and wise that they should be restricted in the first place to that business for which they were created, and in the next place that they should not be allowed to hold more land than was proper and needful in their legitimate business. Perpetual estates in land are deemed in this State to be impolitic and are strictly prohibited. If however, corporations might hold any quantity of land for any length of time, this important principle which regulates the holding of title to real estate in this State would be set at naught. Inattention to this restriction as to corporations would open the widest door to a danger which has already begun to create real apprehension in some minds, and which is undoubtedly an actual danger, whether or not there may now exist grounds for its apprehension."

Accepting the above conclusion as declaratory of the meaning of the constitutional and statutory provisions under consideration, the further conclusion is inevitable that it is the duty of the State to compel the corporation, after five years' holding thereof, to relinquish title to lands not necessary to its legitimate business, and thereby prevent the retention by it of a "perpetual estate," in such lands. Such being the object of the law, can it fairly be contended that a bona sale by a corporation of useless property, even after the five-year period—the State having in the meantime withheld escheat proceedings—does not accord with and carry out the policy of the law? In the event of such conveyances of the property, what ground of complaint can the State have, and what further interest has it to subserve? Obviously these questions must be answered in the negative, unless the State has the right to enforce the escheat for the sole purpose of enriching itself or inflicting punishment upon the corporation—an assumption which we have said should not be indulged. As well argued by counsel, forfeiture to the State of a fee in real estate is not permitted by the Constitution by way of punishment, even for treason, the greatest of crimes. Const. section 20. Neither by the Constitution nor the statute is it declared that the corporation shall be divested of, or the State vested with, the title to such useless lands immediately upon the expiration of the five-year period; nor does either contain any prohibition against a sale or conveyance by the corporation after that date. The absence, however, of such a restriction is not inconsistent with the right of the State to claim an escheat of the property at the end of the five years. It may, upon the expiration of that period, immediately take steps to enforce

its right to the property and thereby defeat any subsequent attempt at a sale and conveyance of it by the corporation. But, if it fail to enter escheat proceedings before there had been a bona fide sale and conveyance of the property by the corporation for a valuable consideration, the purchaser by such sale and conveyance will take an indefeasible title, free from any subsequent proceedings on the part of the State to establish an escheat.

The constitutional and statutory declaration that corporate property held in contravention of law shall escheat to the Commonwealth and vest in the school board does not of itself authorize the conclusion that the title to the property will not remain in the corporation until proceedings for escheat shall have been instituted and the escheat duly adjudged. While the statute provides that the school board may, in the name of the Commonwealth for the use and benefit of the public schools of the city, by its president or other officer to be designated by it, enter upon and take possession of "so much real, personal or mixed property in the city, which from alienage, defect of heirs, failure of kindred, or other causes (the latter term embracing useless lands held by a corporation more than five years), shall escheat to the Commonwealth," it does not thereby mean that such possession can forcibly be taken as against a bona fide claimant of the property in possession, resisting the right of the school board thereto, or that the school board's or its representative's mere belief that the property has escheated, would entitle it to take possession, even if the property were vacant. We would say that in every instance of claim by the Commonwealth or school board to property by escheat, if such claim is denied by another claimant

actually or constructively in possession thereof, whether such adverse claimant be the corporation sought to be ousted or a vendee of the property, an action must be brought by the school board, or by the Commonwealth for the use of the public schools, to establish the escheat. By thus proceeding a judicial determination of the rights of the parties may be secured and the requirements both of the Constitution and statute, satisfied.

The "inquest of office found" is abolished by the statute (section 2971), as many ancient common-law writs, such as the writ of injunction, scire facias, and quo warranto have been similarly abolished; but in lieu thereof other modes of procedure more simple and effective have been provided. Civ. Code Prac., sections 271, 480. The statute, supra, makes such provision; an action being substituted for the inquest of office. So, while the statute declares that such property as is therein described shall escheat to the Commonwealth "without office found," this does not obviate the necessity for having determined the question of whether the grounds or conditions which authorize an escheat of the property involved in fact exist, which must be done "by an action at law or in equity." The burden of showing the existence of these grounds is upon the Commonwealth —not upon the claimant in possession. A corporation may lawfully acquire any quantity of real estate. What is necessary to its business it may hold indefinitely. What is useless for its business it may not hold longer than five years. Therefore such facts, as whether the property was necessary for the use of the corporation when acquired, or whether it became so after its purchase and was used in its business at any time within the five years immediately

preceding the institution of the action, are matters
for judicial inquiry and decision. The same char-
acter of inquiry or trial would also be necessary if
the question were whether the property claimed by
the Commonwealth should escheat on the ground of
alienage, defect of heirs, or failure of kindred.
Whether in any given case a particular property has
escheated depends upon the establishment of the
necessary facts and the ascertainment and applica-
tion thereto of certain legal principles. It is ap-
parent, therefore, that the questions to be deter-
mined are such as will be found capable of adjudica-
tion only by a court. Obviously, a corporation or
person in possession of real estate is under no legal
obligation to surrender it upon the mere declaration
of the school board that it has escheated and vested
in it. This is of itself sufficient to show a necessity
for judicial action of some kind. It could not have
been contemplated by the Legislature that the Com-
monwealth or the school board should decide whether
in any given case the property has escheated to the
· Commonwealth. The concession of such right would
make the Commonwealth or school board judge in its
own case, which could not be allowed.

In this connection it should not be overlooked that
the construction of section 2971, Ky. St. 1903, de-
manded by appellants would cause it to conflict with
those regulating the recording of conveyances in this
State. Under our system of land conveyancing the
validity of titles is determined from the public
records. A would-be purchaser of real estate from
a corporation might be presumed to know that it
could not hold the same, if unnecessary to its business,
longer than five years; for such is the law. He might
ascertain from the public records how long the prop-

erty had been held by the corporation, but could not from it discover whether it had or had not been of use to the corporation in its business within the five years preceding, because this fact would not be shown and is not required to be shown by the records. In other words, the question whether the property is useful or useless in the corporate business is one dehors the record. As argued by counsel, even in proceedings for escheat against the corporation, that question must be settled judicially before the State can be adjudged to have acquired title. A fortiori it is true that a purchaser of land is not bound to determine the question for himself, or to take the property upon the peril of escheat. If this were not so, it would be unsafe for one to purchase of a corporation any land held by it more than five years. Even if a proposing purchaser should satisfy himself that the property had been continuously used by the corporation and was necessary to its business, it would nevertheless be unsafe for him to accept a deed, because he might become involved in subsequent litigation instituted by the Commonwealth or school board upon a claim that the property had not been used by the corporation during the five years preceding his purchase, in which case judgment of escheat and consequent loss to him of the property might result, if it should turn out that he had been deceived respecting the corporate use of the property, or that he had, before the institution of the proceeding against him by the State, lost the evidence showing such use. The records would no longer be a guide in such transactions. Our conclusion is that the holding of useless real estate by a corporation for more than five years, while a cause or ground of escheat, does not ipso facto effect an escheat; in other

words, that the title to the property, notwithstanding the existence of the grounds of escheat, remains in the corporation until an action for escheat shall have been instituted, and if, before this is done, the corporation bona fide sell and convey the property to a third person, the latter would be vested with an indefeasible title to the land.

The question before us has not heretofore been presented to this court for adjudication; but ample authority may nevertheless be found, both in the text-books and decisions of courts of last resort in other States, to support the conclusion expressed above. The general rule is that although a corporation may be disabled or forbidden by the organic or statute law of a state from holding land except for particular purposes, or from holding land beyond a prescribed limit or quantity, yet, if it does hold land in the face of such disabilities or prohibitions, its title will be good except as against the State alone, and that it will be deemed to have a good title until its title is invalidated in a direct proceeding instituted by the State for that purpose, and this rule prevents the title of the corporation from being assailed by its grantor or grantee. 10 Cyc. 1133, 1134, Miller v. Flemingsburg Turnpike Co., 109 Ky. 475, 59 S. W. 512, 22 Ky. Law Rep 1039; Farrington v. Putnam, 90 Me. 405, 37 Atl. 652, 38 L. R. A. 339; Hagerstown Mfg. Co. v. Keedy, 91 Md. 430, 40 Atl. 965; Ragan v. McElroy, 98 Mo. 349, 11 S. W. 735; Watts v. Gantt, 42 Neb. 869, 61 N. W. 104; De Camp v. Dobbins, 29 N. J. Eq. 36; Farmers' L. & T. Co. v. Curtis, 7 N. Y. 466; Mallett v. Simpson, 94 N. C. 37, 55 Am. Rep. 595; Barrow v. Nashville, etc., Turnpike Co., 9 Humph. (Tenn.) 304; Russell v. Tex., etc., Ry. Co., 68 Tex. 646, 58 S. W. 686. In discussing the

foregoing rule Mr. Thompson, in his excellent work on Corporations, says: "The rule also operates in such a way that, although the State might, in a direct proceeding for that purpose, have overthrown the title of the corporation and escheated the property to its own use, yet, not having done so, the corporation may in the meantime convey an indefeasible title to another of whatever interest in the lands had been conveyed to or acquired by it." 5 Thompson on Corporations, section 5797; 10 Cyc. 1135. In respect to the same doctrine we find in 10 Cyc. 1138, this further statement: "As the jus disponendi is an incident of ownership whenever the corporation has power to own land it has the power to dispose of it in like manner as a natural person might do. The law goes further. Although as against the State the corporation may not have the power to hold land to which it has acquired a fee-simple title, and although it may hold it subject to the constant risk of intervention by the State, yet, until the State intervenes to escheat it, the corporation may transfer it to another and pass a good title to him. It may grant to another corporation the right to use such land for any purpose within the powers of the grantees, although such purpose was not within the powers of the grantor. Although a corporation may not have the power to hold particular land, for the reason that it is not required for the purposes of the corporation, yet it may sell such land and pass a good title to the purchaser."

The rule as here stated was approved and applied by the Virginia Court of Appeals in Fayette Land Company v. Louisville & Nashville R. R. Co., 93 Va. 274, 24 S. E. 1016, a case in which the Fayette Land Company, purchaser of lands from the Louisville &

Nashville Railroad Company, refused to pay for them and sought to avoid the sale upon the ground that as the railroad company had no power to acquire the lands it was without power to convey title to same. The court held, however, that the deed under which the railroad company acquired the lands was not void, and that, as no steps had been taken by the state of Virginia to revoke its title to the lands, its deed to the Fayette Land Company vested in it a good title. In discussing this feature of the case the court said: "In Fritts v. Palmer, 132 U. S. 282, 10 Sup. Ct. 93, L. Ed. 317, it is said by Mr. Justice Harlan that, 'where a corporation is incompetent by its charter to take a title to real estate, a conveyance to it is not void, but only voidable, and the sovereign can object. It is valid until assailed in a direct proceeding for that purpose.' The text-writers are to the same effect. In 1 Beach, Priv. Corp. section 378, it is said: 'No party except the State can object that a corporation is holding real estate in excess of its rights. Accordingly, under an act which forbids a foreign corporation to acquire and hold real estate, a deed of conveyance of land to such corporation is not void. It passes the title, and the corporation may hold the land subject to the Commonwealth's right of escheat. The Commonwealth alone can object to the legal capacity of a corporation to hold real estate. There must be a direct proceeding by the State for the purpose of vacating the deed.' "

The case of Abrams v. State of Washington, 88 Pac. 327, 9 L. R. A. (N. S.) 186, decided by the Supreme Court of that state, seems to be strongly in point. The action was brought by Abrams to recover and quiet his title to a valuable piece of real estate in the city of Seattle, which he had twenty

years before sold and conveyed to one Lou Graham, who at once took possession of the property and erected valuable improvements upon and occupied it as a place of residence until her death, which occurred a short time before the institution of the action. Having died intestate R. V. Ankey was appointed and qualified as her administrator, and he took possession of and leased the premises. The plaintiff, Abrams, was never in possession of the property after his sale of it, and made no claim to it prior to the commencement of the action. Lou Graham, during her residence in the United States and at her death, was an alien, being a subject of the German Empire. A brother and two sisters of the intestate, all aliens, residents, and subjects of the German Empire, by answer set up claim to the property as her only heirs at law. Abrams claimed title to it on the ground that, as Lou Graham was an alien, his deed to her conveying the property was void and passed no title. The state of Washington and county of King each filed an answer, claiming that the property upon the death of Lou Graham by operation of law escheated to the state for the benefit of the school fund.

It is stated in the opinion that the Constitution of Washington does not permit an alien to acquire or hold estate by purchase or deed, but provides that an alien may acquire title to real estate (1) by inheritance; (2) under mortgage or in good faith in the ordinary course of justice in the collection of debts; (3) in lands containing valuable deposits of minerals, etc; (4) in land necessary for mills and machinery to be used in the development of such mineral lands and in the manufacture of products therefrom. Upon the state of case thus presented the Supreme Court

rejected the claim of Abrams, and also those of the state of Washington and county of King to the real estate in controversy, holding that the title passed by inheritance to the heirs at law of the intestate. The conclusions resulting from the logical reasoning of the court and numerous authorities, set forth in the opinion, are tersely expressed in the last paragraph thereof as follows: "Our conclusions are (1) that the deed from appellant, Abrams, divested him of title to the property; (2) that at all times prior to alienation of the property by Lou Graham, or prior to her death, the State was entitled by proceedings in the nature of office found, to have declared a forfeiture or escheat; (3) that the State, having failed to declare such forfeiture or escheat prior to her death. lost its right so to do; (4) that upon her death the real estate descended to her alien heirs. In view of these conclusions, the judgment of the honorable superior court was right, and it is accordingly affirmed." The case supra is supported by two others decided by the same court, viz., Oregon Mortg. Co. v. Carstens, 16 Wash. 165, 47 Pac. 421, 35 L. R. A. 841, and State ex rel. Atkinson v. World Real Estate Commercial Co., 89 Pac. 471. In the latter case, which arose after Abrams v. State was decided, it was held that, though under the provisions of the Washington Constitution the state could have caused an escheat of the land of an alien while he held the title thereto, yet his conveyance by deed to a person capable of taking title, for a valuable consideration, defeated the right of the state to declare an escheat. So whether a demand of an escheat of property by the State be based upon the ground of alienage, defect of heirs, failure of kindred, or that it is held by a corporation in contravention of law, the same

necessity exists for its obtaining in some form a judgment declaring the escheat, in order that the State or school board may rightfully take possession of it; and this, we think, would be true, if the property were apparently vacant. If the language of section 2971, Ky. St. 1903, authorizes the construction that the holding by a corporation of real estate not proper or necessary for carrying on its legitimate business for a longer period than five years shall ipso facto vest the title thereto in the school board immediately upon the expiration of the five years and without any proceeding to accomplish that end, it would amount to the infliction of a penalty without trial or conviction. If such were the meaning of the statute, it would be the duty of this court to declare that part of it unconstitutional. The power to provide forfeitures and penalties for cause rests in legislative discretion. The power, however, to inflict penalties, is not incident to the legislative will, but belongs to the judicial department of the State government; and even that department may not inflict them without first affording to the persons against whom they are sought to be enforced an opportunity to be heard in their own defense. One cannot be deprived of his property without due process of law.

The question under consideration was before this court in the case of Marshall v. McDaniel, 12 Bush, 378. The validity of a statute which provided for the forfeiture to the state of the title to certain lands for failure of the owner to list them for taxation was involved; the statute expressly providing for such forfeiture "without an inquest of office found." While recognizing in the opinion the power of the Legislature to provide for the assessment of lands for taxation and for the collection of taxes in the

most summary manner by prescribing penalties
against the tax payer, even to the extent of reaching
to the forfeiture of the estate, for neglect of the duty
to list and pay taxes on his property, the court said:
"But, when such laws are enacted, the forfeiture
prescribed must be regarded as penalties, and they
cannot be inflicted until inquiry has first been made
and the commission of the offense ascertained by
due course of law.  Self-enforcing penal statutes are
repugnant to the plainest principles of justice and
are utterly inconsistent with the fundamental max-
ims of a government in which the judicial power is
vested in a department separate from and independ-
ent of the law-making power.  "To enjoin what shall
be done or what left undone, and to secure obedience
to the injunction by prescribing appropriate penalties,
belongs exclusively to legislation.  To ascertain a
violation of such injunction and inflict the penalty
belongs to the judicial function.'  Gaines v. Buford,
1 Dana, 481.  By the Magna Charta it is declared that
no citizen shall be disseised of his freehold or be con-
demned, but by the lawful judgment of his peers or
by the law of the land.  The substance of this decla-
ration is contained in our Bill of Rights.  Its mean-
ing and intention is that no man shall be deprived
of his property without being first heard in his own
defense.  It may be that the act of 1825 was intended
to confer power upon the courts in determining the
rights of individual litigants to enter into collateral
inquiries of this nature; and in the case of Robinson
v. Huff and Whittaker, 3 Litt. 38, it is intimated in
a dictum that the Legislature had the power to take
and pass the title to real estate without inquest of
office, and therefore to authorize the trial of a man's
guilt and the infliction of the prescribed penalty in

another than a direct proceeding against him. This conclusion seems to have been based upon the idea that the right of the citizen depends alone upon the common-law rule that no freehold may be given to the king, nor derived from him, but by matter of record, and that the common law is within the legislative control. But when it is attempted to pass title to the Commonwealth, and to forfeit the citizen's property by way of punishing him for failing or neglecting to perform a public duty, his right to be heard in his own defense does not depend upon the rules of the common law. It is secured to him by the Constitution. Gaines v. Buford, 1 Dana, 481; Page v. Hardin, 8 B. Mon. 648; Commonwealth v. Jones, 10 Bush, 725; Burkett v. McCarty, 10 Bush, 758; Griffin v. Mixon, 38 Miss. 424. We conclude without hesitation that so much of the act of 1825 as provided that for a mere failure to list lands for taxation the title should be forfeited, and should ipso facto, without inquiry or trial, and without opportunity to the party supposed to be in default, even to manifest his innocence, be vested in the Commonwealth, is unconstitutional and void.''

The opinion of the case supra is so sound in principle and forceful in its logic as to leave no doubt of the correctness of the conclusions reached. Applying it to the case at bar, we are forced to declare that no power exists in the Legislature of the State to forfeit the land of a corporation and vest the title ipso facto in the State, because of its having violated the law in holding it longer than is authorized, without affording an opportunity to such corporation to resist the escheat. It must not be overlooked that the provisions of the Constitution and the statute apply to private or commercial corporations as well

as they do to public corporations, and as in the conduct of business enterprises partnerships, whether wisely so or not, have largely given way to corporations, statutes affecting their rights should only be given such judicial construction as would be warranted by their language and accomplish the object designed in their enactment.    While corporations should not be permitted to exercise powers or enjoy privileges that are, or might reasonably be expected to become, hurtful to the public good, public policy does not require that they needlessly be injured by oppressive restrictions, whether attempted to be imposed by legislative or judicial authority.    It is not beyond the power of the Legislature to provide by law that a corporation may not acquire or hold more than a given quantity of real estate, or that it shall not hold any real estate, except such as may be proper and necessary in carrying on its legitimate business, for a longer period than five years, under penalty of escheat.    But it is not within the power of that body by any form of statute whatever to enforce the penalty thus prescribed without by some kind of judicial proceeding giving the corporation ''a day in court;'' that is, the opportunity to resist its enforcement, whether it may have any legal grounds for doing so or not.    This appears to have been done by the statute under consideration, which, while doing away with the inquest of office, allows a right of action, and consequently a defense.    This is all the corporation has a right to demand, and this much the State should be willing to concede.

We do not by anything that is said in the opinion mean that any sale and conveyance of its useless real estate made by the corporation after five years' holding thereof would deprive the State of the right

of escheat.   If such conveyance were fraudulently made to prevent the escheat, it could be attacked by the State as any other fraudulent conveyance may be attacked, and upon proof of the fraud the conveyance set aside.   But, if the conveyance be made by the corporation in good faith and for a valuable consideration before proceedings of escheat have been instituted by the State, the grantee will take a good title as against the State and school board as well as the grantor.   We do not think the opinion of this court in the case of Louisville School Board v. Chicago, St. L. & N. O. R. R. Co., 99 S. W. 596, 30 Ky. Law Rep. 673, conflicts with the conclusions expressed herein.   That action was instituted by the school board to recover of the Chicago, St. Louis and New Orleans Railroad Company and Illinois Central Railroad Company certain real estate on the ground that it was escheated property; the petition alleging, in substance, that the Chicago, St. Louis & New Orleans Railroad Company owned the lot, and had owned and held it more than five years before the institution of the action, though much of that time it was in possession of the Illinois Central Railroad Company under a lease from the other company, and, further, that during the time of the first-named railroad company's ownership and the existence of the lease, as well as at the time of the institution of the action, the property had not been and was not used by the railroad companies, or either of them, nor was it "proper or necessary for carrying on the legitimate business" of either company.   A special demurrer was filed to the petition, raising the single point that the school board was without capacity to bring or maintain the action, and that the action could only have been brought by the Commonwealth, or by

a proper escheating officer. The special demurrer was sustained by the court below, and the appeal to this court followed. This court reversed the judgment of the lower court, holding that the Louisville School Board could maintain the action.

It is patent that the question as to the effect of a conveyance of useless property by a corporation, made after the lapse of five years' holding thereof and before the institution of the escheat proceedings, was not before the court, and was not decided in that case. These two vital questions, not decided in the former case, are the important ones in this. It is sufficient, therefore, to say of the former opinion, the action being a direct proceeding brought by the school board to recover of the offending corporate owner, property held in contravention of law, that upon the facts alleged in the petition and undenied by answer there was no other  conclusion than that the title had escheated, or reverted to the State, although that question only incidentally arose in that case.

The conclusions of the court below in the case before us being in accord with those herein expressed, the judgment is affirmed.