GRAND ISLAND BANKING COMPANY ET AL., APPELLANTS, V. MARY E. WRIGHT ET AL., APPELLEES.

FILED FEBRUARY 2, 1898. No. 6538.

1. **Married Women: CONTRACTS.** The common-law disability of a married woman to contract is in force in this state, except as abrogated by statute.

2. ———: ———: SEPARATE ESTATE. She may make contracts only

in reference to her separate property, trade or business, or upon the faith and credit thereof and with the intent on her part to thereby charge her separate estate.

3. ———: ———: ———. Whether a contract of a married woman was so made is a question of fact.

4. ———: ———: ———: ACTION ON NOTE: BURDEN OF PROOF. When a married woman signs a note there is no presumption that she intended thereby to fasten a liability upon her separate estate, but in an action on such note, where coverture is pleaded as a defense, and proved, the burden is upon the plaintiff to establish that it was made with reference to, and upon the credit of, her - property, and with the intent to bind the same.

5. ———: SURETYSHIP: MORTGAGES: DEFICIENCY JUDGMENT. Where a husband gives a note for his own indebtedness, and the wife signs the same as surety merely and executes a mortgage to secure the payment thereof upon her own real estate, a personal judgment cannot be rendered against her on foreclosure for any deficiency after sale of the premises, where it is not disclosed that in executing the note and mortgage it was the intention to bind her property generally.

APPEAL from the district court of Hall county.   Heard below before HARRISON, J.   *Affirmed.*

*Charles G. Ryan,* for appellants.

*W. H. Thompson, contra.*

NORVAL, J.

The Grand Island Banking Company and John Lang each brought a separate action in the district court of Hall county against Mary E. Wright and Frederick Wright, wife and husband, to foreclose two real estate mortgages upon the same property, given by the defendants to secure promissory notes executed by them.   Subsequently the suits were consolidated by consent of parties, a decree of foreclosure was entered, and the mortgaged premises were sold thereunder; but the proceeds were insufficient to pay the amount due upon the mortgages.   Applications for deficiency judgments were made by the plaintiffs, which were denied as to the defendant Mary E. Wright, but such judgment was rendered against

the said Frederick Wright in favor of each of the plaintiffs for the full amount due them respectively, after applying the proceeds arising from the sale of the mortgaged property. Plaintiffs appeal from the decision denying their applications for judgments in deficiency against Mary E. Wright. The sole question in the case is whether she was liable to a personal judgment upon either of the notes secured by the mortgages. It is undisputed that the notes and mortgages were signed by both defendants, that the real estate covered by the mortgages at the time they were executed was owned by Mary E. Wright, who was then a married woman living with her husband, and that in neither of the notes or mortgages is there any stipulation to the effect that they were given with reference to her separate property, or that her estate generally should be bound for the payment of the debts secured by said mortgages. There is to be found in the bill of exceptions evidence tending to establish that the notes were executed to obtain loans made to the husband alone for his individual use and benefit; that no part of the debts was contracted by the wife, or in her behalf; that she signed the notes as surety merely for Mr. Wright, there being no agreement or understanding of any kind, nor any fact or circumstances proven, from which an inference can be drawn that her property, other than that covered by the mortgages, if any she possessed, which is not shown, should be liable for the payment of the notes. We are persuaded that the evidence adduced was sufficient to authorize the trial court in finding that the notes were not made with reference to Mrs. Wright's separate estate, or that she agreed or intended to bind the same, except to the extent of the property actually pledged by the mortgages. Under the facts disclosed by this record was either of the plaintiffs entitled to a deficiency judgment against Mrs. Wright?

The important question that confronts us in this case is the liability of a married woman on her contracts of suretyship. The solution of this question depends upon

the extent of the power conferred upon her by the legislature to create debts to be paid out of her separate property, since, at common law, a married woman is wholly incompetent to contract in her own name, and this rule is in force in this state unless it has been abrogated in whole or in part by statute. By section 1, chapter 53, Compiled Statutes, the property which a woman may own at the time of her marriage, and the rents, issues, and profits, or proceeds thereof, as well as any property subsequently acquired by descent, devise, or the gift from any person except her husband, are her sole and separate property, and not subject to the disposal of her husband or liable for his debts, except for necessaries furnished the family, and not then until execution against the husband for such indebtedness has been returned unsatisfied for want of property whereon to make a levy. Section 2 declares: "A married woman, while the marriage relation subsists, may bargain, sell, and convey her real and personal property, and enter into any contract with reference to the same in the same manner, to the same extent, and with like effect as a married man may in relation to his real and personal property." Section 3 provides: "A woman may, while married, sue and be sued, in the same manner as if she were unmarried." Section 4 is in this language: "Any married woman may carry on trade or business, and perform any labor or services on her sole and separate account; and the earnings of any married woman, from her trade, business, labor, or services, shall be her sole and separate property, and may be used and invested by her in her own name."

Thus it will be observed the legislature has to some extent removed the common-law disability of a married woman. In this state she may acquire and hold property in her own right, and may engage in business on her separate account, and her earnings derived either from such trade or business or from her labor or services she owns in her own right. The implied power of a *feme covert* to contract is given by the last section quoted; but this only

41

extends to her separate trade or business and to contracts
with reference to her personal services.   The express au-
thority conferred upon married women to enter into con-
tracts is to be found in section 2 copied above.   But this
statute does not expressly, nor by implication, enlarge a
wife's capacity to contract generally.   She can buy and
sell property in her own name and upon her own account,
and enter into valid contracts with reference to her sepa-
rate estate the same as if she were a *feme sole*, or as a mar-
ried man may in relation to his property.   The statute
does not undertake to confer upon a married woman an
unrestricted power to make contracts, but such right is
limited to contracts made with reference to, and upon the
faith and credit of, her separate property or estate.   Upon
such contract she is liable, but all her other engagements
and obligations are void as at common law.   To hold un-
qualifiedly that a married woman has the same right to
enter into contracts, and to the same extent, as a man
would be to disregard the qualifying clause of said sec-
tion 2, which confers upon her the authority to "enter
into any contract with reference to the same [her prop-
erty] in the same manner, to the same extent, and with
like effect as a married man may in relation to his real
and personal property."   If the legislature had intended
to wholly remove the common-law disabilities of a mar-
ried woman, and give her general power to make con-
tracts of all kinds, this intention, doubtless, would have
been expressed in apt and appropriate language.   It
would have expressly enacted that she could bind herself
and her property by her general engagements whether
made or entered into for the benefit, or on account of, her
separate property or not, instead of empowering her to
contract alone with reference to her own property, trade,
and business.   In construing this statute it is important
to bear in mind that the legislature was not attempting
to impose disabilities upon married women, but was en-
gaged in removing some of those already existing.   She
can contract only so far as her disabilities have been so

removed by the legislature. The statute requires that contracts, to be valid, must be entered into with reference to her separate property, and it is for the courts to so construe this enactment as to carry out the legislative will. It is true section 3 permits a married woman to sue and be sued, but this does not authorize the recovery of a judgment against her when no cause of action exists, nor does it attempt to declare what contracts of hers will support an action; what are valid or what are nugatory. The construction we have given the statute is in accord with numerous decisions of this court. (*Davis v. First Nat. Bank of Cheyenne*, 5 Neb. 242; *Hale v. Christy*, 8 Neb. 264; *Spaun v. Mercer*, 8 Neb. 357; *State Savings Bank v. Scott*, 10 Neb. 83; *Barnum v. Young*, 10 Neb. 309; *Gil'espie v. Smith*, 20 Neb. 455; *Eckman v. Scott*, 34 Neb. 817; *Godfrey v. Megahan*, 38 Neb. 748; *Buffalo County Nat. Bank v. Sharpe*, 40 Neb. 123; *McKinney v. Hopwood*, 46 Neb. 871.)

*Hale v. Christy*, cited above, was an action to foreclose a mortgage given by the defendants, husband and wife, to secure their promissory note. The trial court found that the wife was personally liable for the debt. This court held she incurred no personal obligation by executing the note. The third paragraph of the syllabus reads as follows: "Under sections 42 and 43, chapter 61, General Statutes, a married woman may sell and convey real estate, or any interest she may have therein, the same as if she were single. As to her other contracts she is liable only to the extent that they are made with reference to, and on the faith and credit of, her separate estate." It is suggested that the holding in that case as to the personal liability of Mrs. Christy was mere *obiter* for the reason the question did not then arise, and could not until the court came to render a deficiency judgment. The finding in the decree of foreclosure that Mrs. Christy was personally liable for the debt would have bound her, unless set aside, so that the decision on that proposition was not *obiter*. This is the effect of the decision in *Stover v. Tompkins*, 34 Neb. 465. We quote the first clause of

the syllabus of the case: "Where a grantee of real estate has assumed in the deed of conveyance a certain mortgage as part of the consideration, and in an action to foreclose had been made a defendant and a decree rendered against him that he should be liable in case of deficiency, which decree remained unreversed and without modification, he will not be permitted, when judgment for deficiency is sought, to set up facts which existed when the original decree was obtained and should have been pleaded to show that he was not liable."

*State Savings Bank v. Scott*, 10 Neb. 83, was an action upon a joint and several promissory note signed by W. D. Scott and S. A. Scott, husband and wife. The coverture of Mrs. Scott was pleaded. The trial court found that she executed the note as surety for her husband, and was not liable for its payment. This court affirmed the judgment, the last clause of the syllabus being in the following language: "A wife is bound by her contracts when made with reference to or upon the faith and credit of her separate estate, but she is not bound as surety upon a promissory note unless it appears that she intended thereby to bind her separate estate." The same doctrine was again stated in *Eckman v. Scott*, 34 Neb. 817.

*Barnum v. Young*, 10 Neb. 309, was a suit against a married woman upon her promissory note, the sole question involved being whether her coverture relieved her from liability for its payment. From a verdict in her favor the plaintiff prosecuted error. This court affirmed the judgment, and approved, as containing a fair expression of the law, the following instructions given upon the trial:

"1. The defendant being a married woman at the time she signed the note in question, she will not be liable for the payment thereof unless it was given with reference to, and on the faith and credit of, her separate property and estate.

"2. You are instructed by the court that under the law and evidence of this case the material question for you to

settle from the evidence is, Did the defendant, at the time she gave the note to John G. Compton, contract with reference to and upon the faith and credit of her separate estate? If she did so contract, then she would, under the law of this case, be liable for the full amount of the note. But if from the evidence you find that she did not so contract with reference to, and upon the faith and credit of, her separate estate, then you must find for the defendant."

*Godfrey v. Megahan*, 38 Neb. 748, was a suit against a husband and wife upon a promissory note executed by them for a pre-existing debt of the husband, the wife signing the same as surety merely. She pleaded her coverture, and that the note was not executed with reference to her separate property, trade, or business, but at the request of her husband as surety for him. Upon a trial to the court this defense was sustained and the action dismissed as to Mrs. Megahan, which judgment was sustained upon a review of the record by this court. The propositions decided in that case are clearly stated in the syllabus of the opinion prepared by RAGAN, C., as follows:

"1. The disability of a married woman to make a valid contract remains the same as at common law, except in so far as such disability has been removed by our statutes.

"2. The statute has removed the common law disability of a married woman to make contracts only in cases where the contract made has reference to her separate property, trade, or business, or was made upon the faith and credit thereof, and with intent on her part to thereby bind her separate property.

"3. Whether a contract of a married woman was made with reference to her separate property, trade, or business, or upon the faith and credit thereof, and with intent on her part to thereby bind her separate property, is always a question of fact."

In *Buffalo County Nat. Bank v. Sharpe*, 40 Neb. 123, it

was held that where a married woman executes a mortgage on her real estate to secure the debt of her husband, her separate estate to the extent of the property mortgaged is bound for the payment of such debt. Of the same purport is the case of *Watts v. Gantt*, 42 Neb. 869.

In *Smith v. Spaulding*, 40 Neb. 339, it was decided that a married woman may contract as surety for her husband, but that decision did not overrule or modify the prior adjudications of this court relative to the liabilities of married women on their contracts, as an examination of the opinion will disclose. This court held that the trial court in that case erred in refusing an instruction embodying the proposition enunciated in the syllabus in *Barnum v. Young*, 10 Neb. 309.

In *Briggs v. First Nat. Bank of Beatrice*, 41 Neb. 17, it was ruled that a married woman is liable on a note which she signed as surety, when the note contained a clause pledging her separate estate for its payment.

This court has not in any instance decided that a married woman is personally liable on her general engagements, or that all the common-law disabilities of a *feme covert* have been abrogated in this state. On the contrary, the rule has been steadfastly adhered to that her contracts to be valid must be made with reference to, and upon the faith and credit of, her separate property. Her intention to charge such estate must be disclosed. If the rule laid down in the decisions mentioned above so long adhered to is to be abrogated, it should be by legislative enactment.

There is much confusion and conflict in the decisions of the courts of the different states upon the proposition whether the intention to charge the separate estate by the giving of a promissory note must be expressed on the face of the instrument, or whether it may be established by parol evidence. It is not necessary in this case that we should decide between the two rules, since it does not appear from the note itself, nor was it established by other testimony, that it was her intention to bind

her own property, other than that covered by the mortgage.

It is claimed that when a *feme covert* executes a note the presumption arises that she intended thereby to charge her separate estate or property. To this doctrine we cannot assent. A married woman cannot contract generally, and the burden is cast upon the one seeking to enforce a contract against her to show that it is an obligation she was authorized to make under the statute. An infant is not liable on his contract as a general rule, except for necessaries, but in an action against him on a contract, it is a good defense to establish his minority, unless the plaintiff shows the debt was for necessaries furnished the minor. The burden is not upon the infant to show that the indebtedness was not incurred for necessaries. (*Wood v. Losey*, 15 N. W. Rep. [Mich.] 557.) So in a suit against a married woman when her coverture is pleaded and proven, it devolves upon the plaintiff to show that the contract was made with reference to and upon the credit of her separate estate. (*Vogel v. Leichner*, 10 ? Ind. 55; *Cupp v. Campbell*, 103 Ind. 213; *Jouchert v. Johnson*, 108 Ind. 436; *Stillwell v. Adams*, 29 Ark. 346; *Fisk v. Mills*, 62 N. W. Rep. [Mich.] 559; *Fechheimer v. Peirce*, 70 Mich. 440, 38 N. W. Rep. 325; *Kenton Ins. Co. of Kentucky v. McClellan*, 43 Mich. 564, 6 N. W. Rep. 88; *Schmidt v. Spencer*, 87 Mich. 121, 49 N. W. Rep. 479; *Haydock Carriage Co. v. Pier*, 74 Wis. 582, 43 N. W. Rep. 502; *Buhler v. Jennings*, 49 Mich. 538, 14 N. W. Rep. 488; *Menard v. Sydnor*, 29 Tex. 257; *Trimble v. Miller*, 24 Tex. 215; *Haynes v. Stovall*, 23 Tex. 625; *Covington v. Burleson*, 28 Tex. 368; *Baird v. Patillo*, 24 S. W. Rep. [Tex.] 813; *Early v. Law*, 20 S. E. Rep. [S. Car.] 136; *Litton v. Baldwin*, 8 Humph. [Tenn.] 209; *Hughes v. Peters*, 1 Cold. [Tenn.] 67; *Lane v. Traders Deposit Bank*, 21 S. W. Rep. [Ky.] 756; *Habenicht v. Rawls*, 24 S. Car. 461; *West v. Laraway*, 28 Mich. 464.)

*Fechheimer v. Peirce*, 70 Mich. 440, was an action upon a promissory note, signed by Ella G. Peirce and Grand

Peirce, husband and wife. The instrument purported to be signed by the husband as surety. It was shown on the trial that the note was given for a loan of money made to the husband. The check for the money was delivered to him, although it was payable to the order of his wife. The jury returned a verdict against both makers, and a judgment rendered thereon was reversed by the supreme court. Campbell, J., in delivering the opinion of the court, said: "We think there was nothing to go to the jury against defendant. It is the law of this state that a married woman can make no obligation except on account of her own separate property, and that anyone seeking to hold her must make out an affirmative case. * * * The signing of a note by a married woman creates no presumption of consideration, but it must be proved."

While there are authorities which hold that when a married woman signs a note, the presumption arises that she intended thereby to charge her separate property, it is believed that the rule we have adopted is more consistent with sound principle and the weight of authority.

It is argued that if Mrs. Wright is not liable in this case for the deficiency remaining after the sale of the property, because of her coverture, the entire debt was void as to her, and the mortgages upon her real estate given to secure the same indebtedness were not enforceable. The argument is fallacious. She pledged certain of her separate estate to the payment of this indebtedness, and for that reason, to the extent of the proceeds of such property, her separate estate was bound. Further than that she never agreed nor was it her intention that her property should stand as security for the debts of her husband. A wife may make a valid mortgage upon her real estate to secure a note executed by the husband, for his indebtedness, since the intention to charge her own property is manifest. (*Nelson v. Bevins*, 19 Neb. 715; *Buffalo County Nat. Bank v. Sharpe*, 40 Neb. 123; *Watts v. Gantt*, 42 Neb. 869.) But it does not follow

that she is liable on the contract of suretyship where such contract was not made upon the faith and credit of her separate estate, and where she did not intend that such estate should be bound for the payment of the debt. Plaintiffs were not entitled to a personal judgment against Mrs. Wright. (*Gaynor v. Blewett*, 86 Wis. 399; *Johnson Co. v. Rugg*, 18 Ia. 137; *Rogers v. Weil*, 12 Wis. 741; *Wolff v. Van Metre*, 19 Ia. 134; *Salinas v. Turner*, 33 S. Car. 231; *Greig v. Smith*, 29 S. Car. 426; *American Mortgage Co. of Scotland v. Owens*, 72 Fed. Rep. 219, 18 C. C. A. 513.)

AFFIRMED.

HARRISON, C. J., having presided in the trial court, took no part in the above opinion.

SULLIVAN, J., and RAGAN, C., concurring.

RYAN, C., dissenting.

In the opinion prepared by NORVAL, J., it is said that it is undisputed that the notes and mortgage securing said notes were signed by both Mary E. Wright and her husband Frederick Wright, and that in neither is there a stipulation that said instruments were given with reference to the wife's separate property, or, that her estate generally should be bound for the payment of the debts secured by said mortgage. It is also stated that there was evidence tending to establish the fact that the notes were executed to obtain a loan made to the husband alone for his individual benefit, and that the wife signed the said notes solely as surety for Mr. Wright. The notes signed by Mrs. Wright were in the following language:

"$115.00.      GRAND ISLAND, NEB., August 1, 1889.

"February 1st, 1891, after date, for value received, we, or either of us, promise to pay to the order of the Grand Island Banking Company one hundred and fifteen and no 100 dollars at the bank in Grand Island, Nebraska,

with interest at ten per cent per annum payable from maturity. It is expressly understood that all the makers of this note are principals thereon. The indorsers severally waive presentment for payment, protest, and notice of protest and notice of non-payment of this note and all defense on the ground of any extension of the time of its payment, or any part thereof, that may be given to the holder or holders to them or either of them. Secured by mortgage of even date herewith on lots 7 and 8, block 98, in Railroad Addition to Grand Island, recorded in Hall county, Nebraska.

"MARY E. WRIGHT.<br>"FREDERICK WRIGHT."

The only note made to John Lang was in the following language:

"$2,300.00.

"GRAND ISLAND, NEBRASKA, August 1st, 1889.

"On the first day of August, 1894, I promise to pay John Lang, or order, twenty-three hundred and no 100 dollars, with interest from this date until paid at the rate of 7 per cent per annum, payable semi-annually as per coupon attached. Value received. Principal and interest payable at the office of the Grand Island Banking Company in Grand Island, Nebr. Should any of the said interest be not paid when due, it shall bear interest at the rate of ten per cent per annum from the time same becomes due, and upon failure to pay any of said interest within thirty days after due, the holder may elect to consider the whole note due and it may be collected at once. It is expressly agreed and declared that these notes are made and executed under, and are in all respects to be construed by, the laws of the state of Nebraska. MARY E. WRIGHT.

"FREDERICK WRIGHT."

In respect to the mortgages to secure the notes it was stipulated that the legal title of the mortgaged property was, when the mortgages were made, held by Mary E. Wright.

Section 2, chapter 53, Compiled Statutes, is in this language: "A married woman while the married relation subsists may bargain, sell, or convey her real and personal property, and enter into any contract with reference to the same, in the same manner, to the same extent, and with like effect as a married man may in relation to his real and personal property." Section 3 of the same chapter provides: "A woman may, while married, sue and be sued in the same manner as if she were unmarried." By section 1 of the aforesaid chapter it is provided that any property that a woman in this state may own at the time of her marriage and any property that she may afterwards acquire from any person, except her husband, shall be her separate property. The provisions of these sections are supplemented by those of section 4, which section is in this language: "Any married woman may carry on trade, or business, and perform any labor or service on her sole and separate account; and the earnings of any married woman from her trade, business, labor, or services shall be her sole and separate property, and may be used and invested by her in her own name."

The power of a married woman to bind her estate in the same manner as a man might do, would, under the above provisions, exist without room for any question whatever, but for the supposed limitations found embodied in section 2 in this language, "and enter into any contract with reference to the same." One view, and that adopted in the aforesaid opinion, as I understand it, is that by reason of these qualifying words there should be contained in every contract made by a married woman express words to the effect that by her said contract she intends to bind her separate estate. In view of our statutes I shall now consider the cases cited in support of this proposition and such other decisions of this court as bear upon this subject. It is not questioned that the statute under consideration was enacted to relieve married women of their common-law disabilities. The

words of limitation found in section 2 might, therefore, be held necessary because in the statute the status of married women's property alone was under consideration. If from section 2 there should be dropped the words "and enter into any contract with reference to the same" and the corresponding words "in relation to," it would read thus: "A married woman, while the marriage relation subsists, may bargain, sell, or convey her real or personal property in the same manner, to the same extent, and with the same effect as a married man may his real and personal property." This would empower her only to bargain, sell, or convey her property. She could make no other contract with reference to it. To avoid this result the general enabling clause, "and enter into any contract with reference to the same," was inserted. Let us now consider section 2 simply with reference to this clause. For this the parts involved are as follows: "A married woman * * * may * * * enter into any contract with reference to the same (her real and personal property) in the same manner, to the same extent, and with like effect, as a married man may in relation to his real and personal property." If the limitation under consideration requires that a married woman, in order to contract with reference to her real and personal property must, in such contract, expressly so recite, what shall be said of the language "may * * * contract with reference to the same in the same manner * * * as a married man, in relation to his real and personal property"? No one would claim that a married man could render liable to his debts his real and personal property only by expressly stating in his promissory note that he intended thereby to bind such separate real and personal property. This, however, must be the logical effect of the above provision, if it is so construed as to make this requirement in relation to the property of married women, for, by statute, the property, real and personal, of each is to be bound in the same way as is the like property of the other. The

fact that the legislature intended in the chapter to confine its effects to the contractual capacities of a married woman and used the guarded language which it did with regard to the rights of a married woman to contract with reference to her property, so that it would not be misunderstood as changing her marital status and duties toward her husband, is manifested from the consideration that her right to contract is the same as the right of a married man, that is to say, such duties and liabilities as the marriage relation implies between the parties thereto, remain unaffected by this chapter.   By virtue of section 2, chapter 53, Compiled Statutes, there exists such a correlation between the contractual powers of a married woman and those of a married man, with respect to their property rights, that, unless we are willing to say that married men do not contract with reference to their separate property unless their promissory notes or other evidences of indebtedness so state in express language, we cannot consistently insist upon that requirement in relation to the contracts of a married woman. Notwithstanding the confident language to the contrary in the opinion filed as to the construction which should be placed upon this chapter of the Compiled Statutes defining the contractual rights of married women, I think we are not enlightened by a clear uniformity in the adjudications of this court.

In *Webb v. Hoselton*, 4 Neb. 308, MAXWELL, J., said in effect that, at common law, the husband and wife were treated as one person, and that during coverture her legal relation and existence were treated as though suspended, but that, in equity, a married woman, as to contracts with reference to her separate property, was regarded as *feme sole*.   Following this observation there occurred in the opinion this language: "And the fact that a debt has been contracted during coverture either as principal or as surety for herself or husband or jointly with him, seems ordinarily to be held *prima facie* evidence of an intention to charge her separate estate

without any proof of a positive agreement or intention
to do so. (*Bullpin v. Clarke*, 17 Ves. [Eng.] 365; Story,
Equity Jurisprudence 1400; *Murry v. Barlee*, 4 Sim.
[Eng.] 82; *Owens v. Dickerson*, 1 Craig & Ph. [Eng.] 48;
*Norton v. Turvill*, 2 P. Wm. [Eng.] 144.) Our statutes
provide that 'a married woman, while the marriage rela-
tion subsists, may bargain, sell, or convey her real and
personal property and enter into any contract with refer-
ence to the same in the same manner, to the same
extent, and with like effect as a married man may in
relation to his real and personal property. A married
woman may carry on any trade or business and perform
any labor or services on her sole and separate account,
and the earnings of any married woman from her trade,
labor, business, or services shall be her sole and separate
property and may be used and invested by her in her
name.' In the case of *Yale v. Dederer*, 22 N. Y. 450, where
a wife signed a note with her husband as surety, she
having a separate estate, the court held that unless the
consideration of the contract was one going to the direct
benefit of the estate the intention to charge the separate
estate must be stated in, and be a part of, the contract.
And the court refused to permit parol proof to establish
that intention. That decision, in our opinion, cannot
be sustained on either principle or authority." There
was more than one proposition discussed in *Webb r.
Hoselton*, and GANTT, J., dissented as to the result, with-
out giving his reasons or directing attention to the par-
ticular branch of the discussion which met his disap-
proval of the holding of the court in *Yale v. Dederer*, 22
N. Y. 450.

In *Davis v. First Nat. Bank of Cheyenne*, 5 Neb. 242, the
opinion was by Judge GANTT, who, after a brief refer-
ence to the scope of the act under consideration, said:
"It is not necessary now to inquire into the wisdom of
the act in regard to the extent it goes in legalizing the
contracts of married women, or in regard to the right of
action by or against her, as though she were a *feme sole*.

The statute confers upon her the right and power to make legal and binding contracts; it gives her the legal right to sue, and makes her legally liable to be sued on her contracts, in the same manner as if she were unmarried, and the court must expound the law as it finds it made by the constitutional lawmaking power. But the rule must be observed that all such contracts of a *feme covert* must be with reference to, and upon the faith and credit of, her separate estate." The above quotation contains the entire discussion in which was formulated the proposition that a contract which would bind a married woman must be one with reference to, and upon the faith of, her separate estate.

In *Hale v. Christy*, 8 Neb. 264, the language of Judge LAKE upon this proposition was as follows: "It is urged by counsel for Mrs. Christy that owing to her coverture she incurred no personal liability by signing said note. This, no doubt, is true, and the finding of the court below that she was liable cannot be upheld. Even under the very liberal provisions of our more recent legislation respecting the rights of married women, this court has already held that to bind her the contract must be made with reference to, and upon the faith and credit of, her separate estate. (*Davis v. First Nat. Bank of Cheyenne*, 5 Neb. 242.) She was not liable on the note. But while the finding of the court that Mrs. Christy was indebted on the note cannot be upheld, inasmuch as the decree does not go to the extent of adjudging that she shall pay it, no injury was done." Following the above language it was said that as Mrs. Christy could not be held liable at law, her property could not be taken to satisfy a deficiency judgment if the mortgaged property should not thereafter sell for enough to satisfy fully the amount thereby secured. The language quoted, therefore, amounts to mere *obiter*, for it touched no proposition involving the liability of Mrs. Christy as presented in the case as it stood at the time the above opinion was delivered.

In *State Savings Bank v. Scott*, 10 Neb. 83, MAXWELL, then chief justice, quoted from *Davis v. First Nat. Bank of Cheyenne* this language of GANTT, J.: "But the rule must be observed, that all such contracts of the *feme covert* must be with reference to, and upon the faith and credit of, her separate estate." Following the above quotation the chief justice said: "And the same doctrine is affirmed in *Hale v. Christy*, 8 Neb. 264. This being the construction given to this statute more than three years ago, it has become a rule affecting the rights and liabilities of individuals, and, if unsatisfactory, should be changed by the legislature and not by the court."

In *Barnum v. Young*, 10 Neb. 309, COBB, J., while intimating that his views might be different if the question was an open one, declared that he felt bound by the case of *State Savings Bank v. Scott, supra*, and the two cases which it followed.

In *Gillespie v. Smith*, 20 Neb. 455, it was held that a married woman, by limiting her defense to the allegation that the notes she signed were not a charge upon her separate estate, too much restricted it to avoid liability, for the reason that the negative pleaded did not amount to the allegation that her contract did not concern her separate property, trade, or business. In the language of the opinion: "The reason is, that her non-liability can only arise from her inability to contract, and this she must clearly allege."

In the case of *Bowen v. Foss*, 28 Neb. 373, the action had been brought and a recovery had against E. A. Bowen, the wife of D. Bowen, upon their promissory note of which the following is a copy:

"$100. CRETE, NEB., Nov. 27, 1882.

"On or before the 27th day of Nov., 1883, for value received in one spring buggy, we promise to pay F. I. Foss, or order, one hundred dollars, with interest at ten per cent from date, payable at the State Bank in Crete. The express condition of the sale and purchase of the above property is such that the ownership does not pass

from said —— until this note and interest are paid in full; that the said —— has full power to declare this note due, and to take possession of said property at any time that they may deem themselves insecure, even before the maturity of the note.     D. BOWEN.

"E. A. BOWEN."

The defense was that Mrs. Bowen was a married woman living with her husband, D. Bowen, and was sick at the time, and that she signed said note as surety for her husband. Upon these issues there had been judgment against Mrs. Bowen. The discussion of the facts is in the following language of MAXWELL, J., who delivered the opinion of this court: "The testimony of the defendant in error tends to show that the indebtedness in question was incurred for a new buggy; that at the time of the purchase the plaintiff in error was in ill health and could not bear the fatigue of riding in a lumber wagon; that the defendant in error had in his hands for collection certain debts due her in Ohio amounting to about $400; that the husband of the plaintiff in error was not in a condition, financially, to pay the debt, and therefore the credit was not given to him, but to his wife. This testimony is denied by the plaintiff in error and her husband, but we find no denial of the charge in substance, that the husband had no means to pay a debt of this kind. This, we think, is a material circumstance in the case in considering to whom the credit was given, as Mr. Foss testifies that he knew that the wife was abundantly able, while the husband was not. There are other circumstances tending to corroborate the testimony of Foss and the verdict seems to be in accord with the justice of the case."

In *Godfrey v. Megahan*, 38 Neb. 748, the general proposition is again stated, that a married woman's disability to contract has been removed only in cases where her contract has reference to her separate property, trade, or business or was made upon the faith and the credit thereof and with intent on her part thereby to bind her

42

separate property. The third paragraph of the syllabus of the case last referred to would seem amply sustained by the reasoning in *Bowen v. Foss, supra.* This paragraph is as follows: "Whether a contract of a married woman was made with reference to her separate property, trade, or business, or upon the faith and credit thereof, and with the intent on her part to thereby bind her separate property, is always a question of fact."

In *Davis v. First Nat. Bank of Cheyenne, supra,* GANTT, J., speaking of the enactments above referred to, said: "These statutes have legalized the contracts of married women, and, so far as her separate property is concerned, she is *feme sole,* and can legally contract and deal with her property as she pleases. She can bind it by general engagements; but 'it should appear that the engagement is made with reference to, and upon the faith and credit of, her estate; and the question, whether it is so or not, is to be judged by the court.' (Perry, Trusts sec. 659; *Frary v. Booth,* 37 Vt. 78; *Todd v. Lee,* 15 Wis. 400; *Same v. Same,* 16 Wis. 506.)"

It would seem from this language that the proposition that the determination of the intention of the wife in making her contracts was one to be determined by the courts—that is, that it is a question of law—must have been lost sight of in *Bowen v. Foss, supra,* and has met with direct disapproval in *Godfrey v. Megahan, supra.* With reference to this proposition it is difficult to classify *Eckman v. Scott,* 34 Neb. 817, for in that case the language of MAXWELL, C. J., is as follows: "The testimony shows that M. A. Scott is the wife of W. T. Scott; that the debt in this case was that of the husband and did not in any manner relate to the business of the wife, and that she signed the note as surety for him. In a number of cases this court has held that where the contract did not relate to her separate business or estate, a married woman was not bound as surety on a promissory note unless it appeared that she thereby intended to bind her separate estate. (*State Savings Bank v. Scott,* 10 Neb. 84; *Hale v.*

*Christy*, 8 Neb. 265; *Barnum v. Young*, 10 Neb. 309; *Davis v. First Nat. Bank of Cheyenne*, 5 Neb. 242; *Payne v. Burnham*, 62 N. Y. 74.) The wife, therefore, was not liable on the note."

It will hereafter be shown that whether or not a married woman's contract is with reference to, or upon the faith and credit of, her separate property is a question of law or of fact depends upon circumstances; that sometimes it is one, and sometimes it is the other, or, possibly, sometimes both. In *Smith v. Spaulding*, 40 Neb. 339, it was held that a married woman in this state may contract as surety for her husband (citing *Stevenson v. Craig*, 12 Neb. 464), and that the extension of the time of payment of her husband's past due indebtedness is a sufficient consideration to support her contract as his surety for such debt. In *Buffalo County Nat. Bank v. Sharpe*, 40 Neb. 123, it was held that where the consideration was as in the case last cited, and the security for her husband's debt by way of a mortgage on the wife's property, that the consideration was sufficient and that the property mortgaged was duly bound for the payment of the debt secured. This case was approved and followed in *Watts v. Gantt*, 42 Neb. 869. The doctrine of *Smith v. Spaulding* was restated and followed in *Johnson v. Guss*, 41 Neb. 19, and it was held, furthermore, that the cases cited had established in this state the rule that the wife is not liable on her contracts unless they are made with reference to her separate estate, or an intention is shown to bind such separate estate.

While it may be possible that we have not reviewed all the cases cited by this court with relation to the liability of a married woman upon her contracts, it is believed that there is no case omitted which could do more than restate one, or perhaps more, propositions noted already. It can scarcely escape observation that there has never been any attempt to analyze section 2, chapter 53, of the Compiled Statutes. The first attempt to state its scope was this remark of GANTT, J.: "But the

rule must be observed, that all such contracts of the *feme covert* must be with reference to, and upon the faith and credit of, her separate estate." (*Davis v. First Nat. Bank of Cheyenne*, 5 Neb. 242.) In the next case in point of time (*Hale v. Christy, supra*) this remark was approvingly quoted, but immediately afterwards it was disclosed that in the case under consideration it had no practical application. In *State Savings Bank v. Scott* and in *Burnum v. Young*, both reported in the 10th Nebraska, the remark of GANTT, J., was not only approved in the abstract as correct, but was declared to have stood as the law of the state so long that it would be improper for the courts to change it. Cases which followed the four last referred to simply reiterated the same remark as though it had been made independently of the general proposition which immediately preceded it, which was to the effect that the statute had conferred upon a married woman the right and power to make legal and binding contracts and had given her the right to sue, and had made her liable to be sued, in the same manner as though she was unmarried, and that the court must expound the law as it finds it made by the constitutional law-making power. It has the sound of a legal proposition pregnant with meaning to say that all contracts of the *feme corert* must be with reference to, and upon the faith and credit of, her separate estate, but under our statute what is meant by it? In *Davis v. First Nat. Bank of Cheyenne, supra*, GANTT, J., said: "But the settled doctrine of the common law is that the general engagements of a married woman, in respect to her separate property, could only be enforced in equity; and this, not upon the ground that she could make valid contracts in law or equity, but because her honest engagements ought to be answered; and hence it is said that 'intimately connected with the right of a married woman to dispose of her separate property is the right or power of such *feme covert* to contract debts and charge her separate estate, either by special agreements in relation to it, or by general engagements    *    *

and her separate estate will be bound to make good her contracts, and it may be reached.by proper proceedings, though she is not personally liable.' (Perry, Trusts secs. 596, 657, 662; *Pentz·v. Simonson*, 2 Beas. [N. J. Eq.] 232; *Glass v. Warwick*, 40 Pa. St. 140.)"

Already there has been quoted from *Webb v. Hoselton, supra*, language to the same effect as the above with regard to the equitable liabilities of a married woman's property, upon her contracts with reference to it. If, by our statute, the property of a *feme covert* can be subjected only by pleading and proving as an independent substantive fact that the owner contracted with reference to, or upon the faith and credit of, it, in what respect or to what extent have these statutory enactments changed the status of a married woman's property? In both *Webb v. Hoselton* and *Davis v. First Nat. Bank of Cheyenne*, connected with the statement of the rule in equity with reference to the power to subject the property of married women, there was an epitome of the provisions of chapter 53, Compiled Statutes, from which it might be inferred that in the mind of the writer of each of those opinions there existed a sense of close relationship of some kind between the equitable rule as it was and the statutory rule as it is. From the rule of the statute that "A woman may, while married, sue and be sued in the same manner as if she were unmarried" (Compiled Statutes, ch. 53, sec. 3), it seems open to no question that the intention of the law-makers was, at law, to hold personally liable a married woman upon her contracts, instead of compelling a resort to equitable proceedings to subject her separate property. The general rules of pleading are to such an action applicable, for a married woman may be sued during coverture as though she were unmarried. The fact that a married woman has contracted with reference to her separate property, or upon the faith and credit of it, is by no express provision required to receive more attention in the petition against her than though the suit was one against

her husband to charge him in respect to his separate property. In practice, however, the difficult question, and one which there seems never to have been any attempt to meet in this state and the one upon which I cannot agree with the views of NORVAL, J., is, as to the manner in which proof shall be made as to how the wife contracted on the faith and credit of her separate estate. In *Coquillard v. Hovey*, 23 Neb. 622, occurs this language: "As we understand the rule for the construction of contracts, it is that, if a contract is to be construed by reference to its terms alone, and without calling in the aid of extrinsic facts and circumstances, it is the duty of the court to interpret it. But if the construction must depend upon the proof of other and extrinsic facts, then these questions of fact should be submitted to the jury, under proper instructions from the court. (*Begg v. Forbes*, 30 Eng. Law & Eq. 508; *Etting v. United States Bank*, 11 Wheat. [U. S.] 74; *First Nat. Bank of Springfield v. Dana*, 79 N. Y. 108; *Edelman v. Yeakel*, 27 Pa. St. 26.)" Ordinarily the question, whether a contract is with reference to a married woman's separate estate or employment, would probably be a question of fact dependent, for instance, upon the circumstances that goods were purchased for her original stock, or afterward to replenish it, or that clerks or other employés were hired to assist her in conducting her business. But there might be such circumstances surrounding the making of a contract by her upon the faith and credit of her separate property, but not with reference to it, that, as a question of fact, it should be submitted to the jury. In either of these two cases, where there is no writing, the contentions are liable, in a pre-eminent degree, to be dependent upon questions of fact. But where the contract of a married woman is in writing, how are we to ascertain and enforce her liability? There has been no change in the rules of construction or evidence on account of the act in relation to married women. Whenever to the legislature there has appeared a necessity of

a change of rules of evidence in any class of cases that its provisions may be rendered effective, there has been no hesitancy in that respect, as has been instanced by the proviso in section 5, chapter 44, Compiled Statutes, that the agent who acts for the borrower shall also be deemed the agent of the loaner, and the enactment as to the presumption of the value of the real property insured under the provisions of our valued policy law. Indeed, it may be said that all statutory provisions which provide for constructive notice and defines its effect are of this nature. It is therefore worthy of note that in the act relating to married women there is no provision by which is changed the existing rules of evidence and construction, for thereby is evidenced an intention that they shall be given their ordinary meaning and force.

The supreme court of Ohio, in the very instructive case of *Williams v. Urmston,* 35 O. St. 296, had under consideration an appeal from a decree which independently of statute subjected the separate estate of a married woman who had signed an ordinary promissory note with her husband. In respect to the correct deductions to be drawn from the fact that a married woman had signed a note with her husband there was used the following apposite language: "What inference is to be drawn from the act of a married woman, having an estate to her sole and separate use, in signing the promissory note of another, as surety, as respects her intention or purpose in so doing? In view of the fact that in the act of signing she incurs no legal liability, the question admits of but one rational answer, and that is, in the absence of proof showing fraud or imposition, that she intended thereby to make the debt a charge upon her separate estate. Unless this inference is drawn, her act becomes wholly vain and frivolous and entirely destitute of a purpose or a meaning. That such is the natural implication from the act of signing has been distinctly affirmed in numerous cases. In *Bell v. Kellar,* 3 B. Mon. [Ky.] 381, the rule was stated as follows: 'If a *feme covert,*

having a separate estate, make or indorse a note, the presumption is that it was the intention, and the effect is, to charge her separate estate.' In *Cowles v. Morgan*, 34 Ala. 535, it was held that 'a promissory note executed by the wife during coverture, jointly with her husband, is a charge upon her separate estate created by contract.' So in *Burnett v. Hawpe*, 25 Gratt. [Va.] 481, it was held that 'if the wife contracts a debt for herself or for her husband, or jointly with him, the instrument executed by her is sufficient to charge her separate estate without any proof of a positive intention to do so or even a reference to such estate contained in the writing.' In *Metropolitan Bank v. Taylor*, 62 Mo. 338, it was held that 'in reference to her separate estate a married woman is to be treated as a *feme sole*, and the giving of a note, or making of a written contract by her, raises the presumption that she intends to bind her separate estate.' This case was on a note executed by the wife as surety for her husband. The same rule prevails in Kansas. (*Deering v. Boyle*, 8 Kan. 523; *Wicks v. Mitchell*, 9 Kan. 80.) Judge Story, in commenting on the subject, says: 'Indeed it does seem difficult to make any sound or satisfactory distinction on the subject as to any particular class of debts, since the natural implication is, that if a married woman contracts a debt she means to pay it, and if she means to pay it, and she has a separate estate, that seems to be the natural fund which both parties contemplated as furnishing the means of payment.' (2 Story, Equity Jurisprudence sec. 1400. See also to the same effect 1 Bishop, Married Women sec. 873.) In *Avery v. Van Sickle*, ante 270, we held, that where a married woman executed a promissory note for property acquired by her an implication arises, in the absence of proof showing a different understanding, that she thereby intended to charge her separate estate with its payment. If she executed the note upon the understanding that her separate estate was not to be bound for its payment, its enforcement against her would operate a fraud upon her.

No one would pretend that this could be done. But when she executes a note, either as principal, maker, or surety, and has not been deceived in so doing, nor subjected to any undue influence, we think a just inference arises that she thereby intended to deal on account of her estate, and to bind the same in equity for the payment of the note; and that, as a necessary result, a court of equity will give effect to such intention by subjecting the estate to the payment of the note in the mode prescribed by the statute for enforcing claims against the separate estate of a married woman. Her liability, or rather that of her estate, does not depend on whether or not the debt incurred on its account is beneficial to her or otherwise. If made, and no fraud or imposition is shown, the court cannot refuse relief from the mere fact that the engagement entered into proves unprofitable or injurious."

In the foregoing case, in which there were satisfactory citations of authorities as to the presumption which should be held naturally to arise upon proof that a married woman had signed a promissory note, either as principal or otherwise, are clearly, forcibly, and, I believe, correctly stated, not only as applying in an action in equity to subject a married woman's separate property as that was, but as well in an action at law, under our statute, in fixing her personal liability.

IRVINE, C., concurs in the foregoing opinion of RYAN, C.