ADELAIDE BODE, APPELLANT, V. PETER H. JUSSEN ET AL., APPELLEES.

FILED MARCH 28, 1913. No. 17,135.

1. **Acknowledgment:** CERTIFICATE: IMPEACHMENT. "The certificate of an officer having authority to take acknowledgments cannot be impeached by showing merely that such officer's duty was irregularly performed." *Council Bluffs Savings Bank v. Smith*, 59 Neb. 90.

2. **Mortgages:** CONSIDERATION: MARRIED WOMAN. A mortgage executed by a wife upon her separate property, to indemnify one who is a surety upon an official bond of her husband, who has misappropriated the funds coming into his hands by virtue of his office, in the hope, or upon the assurance from her husband, that the execution of such mortgage will save him from arrest and imprisonment for his crime, is not void for want of sufficient consideration moving to the wife.

3. ———: DURESS. Nor is such a mortgage void as having been obtained under duress, where it appears that the mortgagee neither in person nor through an attorney or agent resorted to any undue means by way of threats or deception to obtain the execution of such mortgage.

4. **Husband and Wife:** MORTGAGE BY MARRIED WOMAN. A married woman may mortgage her separate estate or property to secure the individual debt, or to indemnify the sureties upon an official bond, of her husband.

APPEAL from the district court for Richardson county: JOHN B. RAPER, JUDGE. *Affirmed.*

*Edwin Falloon,* for appellant.

*Reavis & Reavis* and *A. R. Scott, contra.*

FAWCETT, J.

Plaintiff brought suit in the district court for Richardson county to cancel a mortgage which she had executed, jointly with her husband, upon her separate property. She made the mortgagees and her husband parties; the latter under an allegation that he has a homestead right in the premises. From a decree dismissing her suit, she appeals.

The mortgage and the note which it was given to secure were both dated April 17, 1906. The note is signed by the husband, E. O. Bode, and his brother, Ernest A. Bode. The mortgage is signed by plaintiff and her husband. The certificate of acknowledgment is of the same date, and is made by Amos E. Gantt, notary public.

For three years or more prior to the date of the mortgage, E. O. Bode had held the office of city treasurer of the city of Falls City. It had developed that he was short in his accounts. On the day the mortgage was executed the defendants Jussen and Holland, who were sureties upon his official bond, met him upon the street in Falls City and asked him about his shortage. He stated that it was somewhere about $1,800, but, upon figuring the matter up, he concluded that it might run to $2,300. He was interrogated as to what he could do in the way of securing the defendants. He stated that his brother Ernest would sign with him, and, when asked if he could give any other security, he stated that he could give them a mortgage upon the home property. He was asked if his wife would sign. He answered that she would. The three then went upstairs to the office of Judge Martin, a practicing attorney of that city. Mr. Martin was advised as to the situation, and, upon his suggestion, the note and mortgage were drawn for $2,500, so that it would be

sure to cover any items Bode might have omitted in his calculations. Thereupon, Bode requested Mr. Gantt, a practicing attorney of many years' standing, who was also a notary public, to accompany him to the Bode home for the purpose of obtaining the signature and acknowledgment of the plaintiff. On their way to the home they met plaintiff. Mr. Bode, out of the hearing of Mr. Gantt, told his wife, of the trouble he was in. It appears to have been the first notice she had had that her husband was a defaulter. Plaintiff and her husband both say that he then told her that he needed $2,500 to straighten matters out; that something must be done right away, or he was liable to be arrested and imprisoned, and stated to her that he wanted her to sign the paper he had with him, which was the mortgage. Thereupon, Mr. and Mrs. Bode proceeded to their home, the notary, evidently not desiring to intrude, following them at a short distance. Upon reaching their home, Mr. and Mrs. Bode had some further conversation, in which Mr. Gantt took no part, after which the mortgage was signed by plaintiff. It was then taken by Mr. Gantt to his office and his notarial seal affixed, when it was given to Mr. Bode and by him delivered to the defendants Jussen and Holland. As soon thereafter as the liability of Jussen and Holland upon the bond had been ascertained, they paid the same, aggregating $2,380, to the proper city authorities.

As the basis for her demand that the mortgage be canceled, plaintiff alleges substantially: That she derived no benefit from the mortgage; that it was executed and delivered without consideration; that she never acknowledged the execution of the same to be her free and voluntary act; that the notary never asked her that question; that the mortgage was executed under duress, in this, that she at that time was in a "delicate" condition; that she was greatly alarmed when told by her husband of the situation he was in, so much so that she did not know what she was doing; that she is a married woman; that the mortgage was upon her separate property, and was given

to secure a debt or obligation of her husband.  In his answer the husband alleges that the defendants Jussen and Holland threatened him with prosecution and "hounded" him to fix up said shortage; that he told them that, if they would immediately place to his credit $2,500 in the bank, to be used by him in the discharge of his shortage, he would sign the mortgage and induce his wife to do likewise; that Jussen and Holland, after obtaining the mortgage, did not place the money to his credit as agreed, and that as a consequence thereof the investigation into the condition of his accounts was not stopped, and he was arrested, prosecuted, and convicted of the crime of embezzlement; that the mortgage was signed under fear and duress; that at the time it was signed he was laboring under great excitement, was distressed in mind and weakened in will, and, believing that the execution of the mortgage would save him from the calamity of threatened prosecution, he signed the same.

The answer of defendants Jussen and Holland deny the allegations as to any duress or attempted duress on their part, and allege the facts leading up to the execution and delivery of the mortgage, and the payment thereunder, substantially as above stated.  The decree found generally for the defendants; adjudged the mortgage to be a valid mortgage, duly executed, acknowledged and delivered for a valid and sufficient consideration; that no duress or fraud was used or practiced upon plaintiff or her husband by the defendants, and dismissed plaintiff's action at her cost.

It will be seen that the questions involved here are: (1) Was the mortgage duly acknowledged within the meaning of the law in relation to acknowledgments?  (2) Was there a sufficient consideration moving to plaintiff for its execution?  (3) Was it executed under duress?  (4) Can a mortgage by a married woman upon her separate property, given to secure a debt of her husband, be enforced, where it does not specifically state that it is her intention to charge her separate property or estate?  We will consider these points in their order.

1. Was the mortgage properly acknowledged? Upon this point there is neither allegation nor proof that any fraud was practiced upon plaintiff to procure her signature to the mortgage. It is argued by counsel for plaintiff that in obtaining his wife's signature Bode was acting as the representative of defendants Jussen and Holland, and that his statement to his wife that, if the mortgage were not signed, he would be arrested and sent to prison was, in effect, and in law, the threat of Jussen and Holland. The clear preponderance of the evidence is against this contention. It shows that the giving of the mortgage was not even suggested by Jussen and Holland, but by Bode himself; that all they said to him about his wife signing was to ask him, when he made the suggestion, if his wife would sign; that they had nothing to do with sending Mr. Gantt along as a notary to take the acknowledgment; that they gave no directions, nor did they make any threats; that everything that was done by Bode in that connection was done on his own initiative. As to what transpired when the acknowledgment was taken, Mr. Gantt frankly states that he does not remember the conversation. He testified: "Mrs. Bode asked me where to sign the mortgage, and I told her where to sign. We spoke of it as a mortgage, but I am not positive that I told her where to sign the mortgage. * * * I have no recollection of Mrs. Bode being asked whether it was her voluntary act and deed. I presume I did. That is all I can say." The words, "I presume I did," were, upon motion of plaintiff's counsel, stricken. The testimony of Mr. Gantt is substantially that which any honest notary would be compelled to give when testifying four years after the time an acknowledgment had been taken. The only evidence offered by plaintiff to in any manner impeach the certificate of acknowledgment was the testimony of herself and her husband. In *Council Bluffs Savings Bank v. Smith*, 59 Neb. 90, we held:

"The certificate of an officer having authority to take acknowledgments cannot be impeached by showing merely that such officer's duty was irregularly performed.

"When the party executing a deed or mortgage knows that he is before an officer having authority to take acknowledgments, and intends to do whatever is necessary to make the instrument effective, the acknowledging officer's official certificate will be, in the absence of fraud, conclusive in favor of those who in good faith rely on it."

There is no question but what plaintiff and her husband knew that Mr. Gantt was an officer having authority to take acknowledgments. They knew that he had been taken out there for the express purpose of taking their acknowledgment to the mortgage which they there signed. No fraud or deception was practiced by the notary. The parties were in their own home. The mortgagees were not present. To hold that mortgagors can deny the acknowledgment of a mortgage and thereby defeat it, upon their naked assertion that a formal question was not asked, would open the door to fraud and perjury and make recorded acknowledgments a snare and a delusion. No one could safely deal with land on the faith and truth of public records if such a rule were to obtain. In *Pickens v. Knisely,* 29 W. Va. 1, 16, it is said: "For reasons of public policy and to protect innocent purchasers, it has been uniformly held that, when a married woman appears before a justice for the purpose of acknowledging a deed, and does in some manner attempt to do what the law requires to be done, the certificate is conclusive of the facts therein stated as regards innocent purchasers." If the notary failed to ask the formal question as to whether or not plaintiff acknowledged the deed to be her free and voluntary act, such failure was, at most, an irregularity only.

2. Was there a sufficient consideration moving to plaintiff for the execution of the mortgage? It seems unnecessary to discuss this assignment. She was told by her husband that he was a defaulter; that unless the mortgage was executed he was liable to be arrested and imprisoned for his crime. This would entail loss of support, and disgrace, not only upon the husband, but upon herself and

family. No true wife would, under such circumstances, refuse to execute a mortgage upon her home, and we do not think a court will ever be found to hold that a mortgage so executed is without consideration.

3. Was the mortgage executed under duress? If the testimony of E. O. Bode were to be taken as true, possibly it might be so held. But, as we have already stated, the clear preponderance of the evidence is against plaintiff upon the point that her husband was acting for the bondsmen in securing the mortgage. He was not doing anything of the kind. He was acting for himself in an earnest endeavor to save himself from arrest and prosecution, and protect the reputation of his family. Nothing was said to plaintiff by any person except her husband, and he was not delegated by Jussen and Holland to make any statements or threats to her. In such a case the rule announced in the cases cited in plaintiff's brief, and in the recent case of *Hoellworth v. McCarthy, ante,* p. 246, not cited, does not apply.

The allegation and testimony by Mr. Bode, that the agreement with Jussen and Holland was that they were to deposit $2,500 in the bank to his credit, is not only denied by them, but is too incredible to be believed. It is taxing our credulity to ask us to believe that two business men, who are sureties upon the bond of a public officer who confesses to them that he is a defaulter, would place a sum aggregating the amount of his defalcation in his hands, or in a bank subject to his check, and trust to his honesty in applying that money in the payment of the shortage. They would be much more apt to fear that if the money were so deposited he might immediately withdraw it and depart for parts unknown.

4. Can a mortgage by a married woman upon her separate property, given to secure the debt of her husband, be enforced? The law upon that point must be taken as settled in this state. Section 2, ch. 53, Comp. St. 1911, which is the same as it was at the time the mortgage in suit was executed, provides: "A married woman, while the mar-

riage relation subsists, may bargain, sell, and convey her real and personal property, and enter into any contract with reference to the same in the same manner, to the same extent, and with like effect as a married man may in relation to his real and personal property." This section of the statute was carefully considered by this court in *Grand Island Banking Co. v. Wright*, 53 Neb. 574. The authorities are there collated and carefully considered, and the conclusion reached that, where a wife executes a mortgage upon her own real estate to secure an indebtedness of her husband, the mortgage will be sustained; but, if the wife also signs the note, she cannot be held upon that for any deficiency after the sale of the premises, where it is not disclosed that in executing the note and mortgage it was the intention to bind her property generally. In *Buffalo County Nat. Bank v. Sharpe*, 40 Neb. 123, we said: "The wife executed and acknowledged as her voluntary deed and act, and delivered to Gallentine, the mortgage on her separate property to secure the payment of the note which evidenced the debt of the husband, and the consideration being its extension of payment. This was a contract which she had the power to make and by which she bound her property for the payment of the amount of the note." That is to say, she bound the property set out in the mortgage; but, under the rule announced in *Grand Island Banking Co. v. Wright, supra*, she did not bind any other estate she may have had outside of that set out in the mortgage. In *Watts v. Gantt*, 42 Neb. 869, we held: "A married woman may in this state mortgage her separate estate or property to secure the payment of the individual debt of her husband. A loan of the money to the husband creating the debt so secured is a sufficient consideration for her executing and delivering the mortgage." And so in this case, while plaintiff may not have received any direct cash consideration for the execution of the mortgage in suit, it was executed, as we have shown, upon a sufficient consideration, and is therefore valid.

Finding no error in the record, the judgment of the district court is

AFFIRMED.

REESE, C. J., BARNES and ROSE, JJ., concur.

LETTON, SEDGWICK and HAMER, JJ., not sitting.