PETERSON BROTHERS & COMPANY, APPELLEE, V. MAE GUN-
NARSON, APPELLANT.

FILED APRIL 11, 1921. No. 21447.

**Husband and Wife:** DESERTION: WIFE LIABLE ON CONTRACT. Where a
husband deserts his wife and departs from the state, leaving her
without maintenance or support, and remains absent therefrom
continuously, with an intent to renounce the marital relation, and
leaves her to act as a *feme sole*, and she so acts, she is liable to be
sued on her contract the same as though she were unmarried.

APPEAL from the district court for Hamilton county:
GEORGE F. CORCORAN, JUDGE. *Affirmed.*

*Hainer, Craft & Edgerton* and *J. J. Reinhardt,* for ap-
pellant.

*C. C. Flansburg* and *Roscoe R. Smith, contra.*

DEAN, J.

The plaintiff corporation is engaged in the retail gen-
eral merchandise business at York. On May 13, 1919, it
sued to recover the purchase price of groceries, dry-goods
and household necessaries generally that were bought by
defendant. A jury was waived. From a judgment for
$108.58 against defendant she appealed.

The facts in brief are these: On June 12, 1910, Harry
A. Peterson and defendant were married. They lived
together until October 15, 1917, when Peterson abandoned
his wife and went to California to live and has resided
there ever since. They never again lived together, nor did
Peterson thereafter, so long as the marriage relation con-
tinued, furnish his wife with any support or funds for
her maintenance, except for a brief period when he was
required by a court decree to furnish "separate mainte-
nance" for her. This feature of the case will be presently
noted. They had no children. On November 21, 1918,
defendant obtained a decree of divorce from her husband,
that is now absolute, and her maiden name of Gunnarson
was restored. Subsequent to and while she was living in

a state of abandonment, in the interval between November 1, 1917, and July 1, 1918, defendant purchased from plaintiff, as need arose, the goods in suit and for which she refused to pay. She denies liability on three alleged grounds: First, that they were necessaries of life and were therefore chargeable solely to Peterson, she being his wife when the goods were bought; second, that the goods were not bought with respect to nor upon the faith and credit of her separate estate; and, third, that no judgment was first obtained against her husband and execution thereon returned unsatisfied prior to the commencement of this action. The first and second assignments only need be discussed.

When the divorce was obtained a property settlement was effected between Peterson and his wife, and, pursuant to the settlement, the parties jointly executed an instrument that is called in the record a "deed of separation and settlement." This instrument was introduced in evidence by plaintiff. By its terms it is provided generally that Peterson shall pay to defendant $2,500 and convey to her the title to certain town lots in Aurora and deliver to her all of his furniture and household goods, with the exception of two articles of trifling value which he reserved. The defendant, in consideration of the foregoing, acknowledged "full and complete payment and satisfaction of all claims" against her husband and his present or after-acquired property or estate, "including all claims for support, maintenance, alimony, homestead, inheritance, or otherwise, all of which claims * * * are hereby and by the said Mae Peterson fully satisfied, released, extinguished and barred." The instrument further provides that Mae Peterson will not hereafter claim from Harry A. Peterson, or his estate, "any support, maintenance, or interest in his property, as his wife, widow, heir, or otherwise, * * * all of which, as above stated, have been fully paid, satisfied, and released." There is nothing on the face of the foregoing instrument to show that defendant's husband was obligated to pay

for the goods in suit, nor has it any relation to the matters involved herein; so that it need not be further noticed.

On the merits the general manager of plaintiff's store testified that, before defendant bought any of the goods in suit, he notified her personally that she could not make any purchases from plaintiff on her husband's account, and if she made any more purchases that they would be charged to her. He said they were sold to and charged solely to defendant. The manager's evidence is corroborated by the original slips upon which are charged the several items of goods. There are 30 or 35 of these slips and all of them indicate, by the recitals thereon, that the goods described therein were charged to "Mrs. Harry A. Peterson" or to "Mrs. Harry Peterson" or to "Mae Peterson."

Defendant testified that she was 31; that plaintiff never notified her that it would not sell goods to her on her husband's account; that prior to November 1, 1917, goods bought by her from plaintiff were charged to her husband, for which no bill was presented; that she never told plaintiff to charge the goods to her; that she never agreed to pay for them; and that she bought only on Peterson's credit. She further testified that the clerks in the store told her that they could not charge any goods to her husband, but that she was not so notified by them until after all of the goods involved in this case were purchased.

It is true the verbal evidence conflicts on the question as to whether defendant purchased the goods on the faith and credit of her own estate. But the learned trial court who heard the witnesses testify, and there were only two witnesses, resolved that conflict, in view of all the evidence, in plaintiff's favor. Whether defendant contracted to purchase and pay for the goods was a question of fact that was decided by the trial court adversely to her contention and we do not find any reason to hold that the court erred in this respect. We conclude that the record fairly shows the debt is properly chargeable to defendant. In *Grand Island Banking Co. v. Wright,* 53 Neb. 574, with

respect to the right of a married woman to contract it is said: "She may make contracts only in reference to her separate property, trade or business, or upon the faith and credit thereof and with the intent on her part to thereby charge her separate estate. Whether a contract of a married woman was so made is a question of fact."

That Peterson's separation from and abandonment of his wife was voluntary and with an intent to renounce the marital relation and leave her to act as a *feme sole* is clearly established. The rule is well stated by Shaw, C. J., in *Gregory v. Pierce*, 4 Met. (Mass.) 478: "The desertion of a wife by her husband, which will enable her to sue, and render her liable to be sued, as a *feme sole*, must be an absolute and complete desertion, by his continued absence from the commonwealth, and a voluntary separation from and abandonment of his wife, with an intent to renounce, *de facto*, the marital relation, and leave her to act as a *feme sole*." In *Rhea v. Rhenner*, 26 U. S. 105, 107, it is said: "The law seems to be settled that, when the wife is left without maintenance or support by the husband, has traded as a *feme sole*, and has obtained credit as such, she ought to be liable for her debts. And the law is the same, whether the husband is banished for his crimes, or has voluntarily abandoned the wife. It is for the benefit of the *feme covert* that she should be answerable for her debts, and liable to an action in such a case; otherwise, she could not obtain credit and would have no means of gaining a livelihood."

The rule, as disclosed by the authorities, is that, where a husband deserts his wife and departs from the state, leaving her without maintenance or support, and remains absent therefrom continuously, with an intent to renounce the marital relation, and leaves her to act as a *feme sole*, and she so acts, she is liable to be sued on her contract the same as though she were unmarried.

Respecting the decree of separate maintenance hereinbefore referred to. It appears that, on September 24, 1918, defendant obtained a decree against her husband,

pursuant to an action theretofore commenced by her, in the district court for Hamilton county, wherein she was awarded separate maintenance in the sum of $60 a month from October 15, 1917, and thereafter, and her right to possession of the homestead was quieted in her.   She was also awarded suit money and attorney's fees and costs. The decree by its terms seems fairly to cover the period of time in which the goods involved herein were purchased. *Wise Memorial Hospital Ass'n v. Peyton*, 99 Neb. 48.

The record does not present reversible error.   The judgment is

AFFIRMED.

